THE GRAVES ELEVATOR COMPANY, Appellant, *v.* MICHAEL J. CALLANAN, Respondent.

*Contracts for the conditional sale of chattels — application of chapter* 315 *of* 1884 *to parts of an elevator in process of erection.*

The statute relating to the filing in the county clerk's office of contracts for the conditional sale of goods, does not apply to the sale of a completed elevator, to be erected in a building, while the materials and parts thereof, although upon the premises of the vendee, are in the actual possession of the workmen of the vendor, engaged in putting them together, and erecting the elevator, there being no such "immediate delivery" to and "possession" by the vendee as is contemplated by the statute; and a chattel mortgage, given by the vendee, will not be operative to pass the title to such parts and materials, while thus upon the land of the vendee, although the conditional contract for their sale may not have been filed in the county clerk's office.

APPEAL by the plaintiff, The Graves Elevator Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Essex on the 12th day of November, 1895, upon the report of a referee, with notice of an intention to bring up for review upon such appeal an order entered in said clerk's office on the 12th day of November, 1895, granting the defendant an additional allowance of five per cent upon the amount involved.

In the spring of 1893, one Henry Allen was engaged in erecting a hotel upon premises owned by him at Lake Placid, N. Y.

Allen entered into a written contract with the plaintiff whereby the plaintiff was to erect and finish a hydraulic elevator in said hotel according to certain plans and specifications made a part of such contract. The plaintiff was to receive therefor $1,490, payable one-third on the arrival of the machinery, one-third on the inclosure of

the work, and the balance thirty days after its completion in accordance with the specifications. And it was further agreed that said elevator and all attachments, appurtenances and machinery connected therewith, furnished by said plaintiff and placed in said building, should be and remain personal property, and that the title thereto should remain in the plaintiff until the same should be paid for.

The elevator was erected and finished some time between the 15th and 27th of July, 1893. It has never been paid for. The various parts of the elevator were manufactured in Rochester and shipped to Lake Placid, to be there put together and erected.

The written agreement between the plaintiff and said Allen was filed in the town clerk's office December 12, 1893.

On the 13th day of June, 1893, Allen and his wife executed a mortgage upon the real estate on which the hotel was situated, to the defendant and others, to secure the payment to them of certain indebtedness for materials furnished for and work, labor and services performed in erecting said hotel. On the same day, as security for the payment of the same indebtedness, Allen executed and delivered to the same persons a chattel mortgage upon the personal property belonging to said Allen in, about or upon the premises of said Allen, known as the Grand View Hotel.

On July 12, 1893, the said Allen executed another chattel mortgage for the same amount and for the same indebtedness. On the 27th day of December, 1893, the said chattel mortgages were foreclosed. At the time of the sale under the foreclosure, but before the premises were sold, the plaintiff, in the presence of the defendant, gave notice of its claim to the elevator, stating that it held under a contract with Allen, by which the title was to remain in the plaintiff until it was paid for.

The elevator was sold separately from the other property, and was bought in by the defendant for the sum of $100. After the sale the plaintiff demanded possession of the elevator from the defendant, which was refused, and the plaintiff brought this action against the defendant for the conversion of the elevator for the sum of $1,490, with interest.

At the time of the execution of the real estate and chattel mortgages first described, the defendant states that he saw parts of the

elevator in pieces, just as it came from the factory, out in front of the hotel. The defendant had no notice of the existence of the contract between the plaintiff and Allen prior to that given to him at the foreclosure sale. The defendant is one of a firm, engaged in the business of plumbing and steam fitting, which had been engaged in furnishing men and materials to do the plumbing in and about the said hotel, and they became parties to the real estate and chattel mortgages because of the indebtedness to them for the labor and materials so furnished. The referee directed judgment for the defendant.

*John A. Barhite*, for the appellant.

*T. F. Conway*, for the respondent.

HERRICK, J.:

The referee found that " work on putting the elevator in place was commenced about June 19th, and finished about June 27th, 1893."

I think the date given, as the time when the elevator was finished, must be a clerical error. I can find no evidence to sustain a finding that it was finished June twenty-seventh, but some that it was finished July twenty-seventh. The testimony of the witnesses, as to the time when it was finished, ranged from July fifteenth to July twenty-seventh, and the finding in that respect should be corrected accordingly.

The referee also found that the elevator did not become a part of the realty, which finding was not excepted to, and in considering the case the elevator must be treated as personal property.

The judgment herein was rendered in favor of the defendant and against the plaintiff apparently upon the theory that the contract between the plaintiff and Allen, whereby the property in question was to remain the property of the plaintiff until paid for, was void, under the statute, because not filed in the town clerk's office in time, and also upon the theory that if the elevator was not in fact in existence at the time of the execution and delivery of the chattel mortgages it was potentially in the possession of Allen, and, therefore, a mortgage upon the same was a good and valid mortgage, and gave title to the purchaser under it. The cases of *Otis* v. *Sill* (8

Barb. 102); *Kribbs* v. *Alford* (120 N. Y. 519), and *Deeley* v. *Dwight* (132 id. 59) are cited to sustain this contention.

Whether the cases referred to do in fact sustain the theory of the defendant, and the learned referee below, upon the peculiar facts of this case, I shall not undertake to discuss.

That question is unimportant, unless the agreement that the elevator should remain the property of the plaintiff until paid for, is void because not filed in the town clerk's office.

At common law a conditional contract or bill of sale like the one in question here would convey no title in the property to the vendee until complied with, and any one purchasing such property or taking a mortgage thereon, would obtain no title thereto or lien thereupon, although such purchase should be made in good faith and for value. (*Ballard* v. *Burgett*, 40 N. Y. 314; *Austin* v. *Dye*, 46 id. 500; *Cole* v. *Mann*, 62 id. 1; *P. T. & S. Co.* v. *Schirmer*, 136 id. 305.)

Allen then could convey no title to or place any lien upon the elevator unless the conditions of his contract with the plaintiff were rendered void by reason of the failure to file the same.

The statute in regard to filing conditional contracts of sale is as follows : " In every contract for the conditional sale of goods and chattels hereafter made which shall be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the things contracted to be sold, all conditions and reservations which provide that the ownership of such goods and chattels is to remain in the person so contracting to sell the same or other person than the one so contracting to buy them until said goods or chattels are paid for, or until the occurring of any future event or contingency, shall be absolutely void as against subsequent purchasers and mortgagees in good faith, and as to them the sale shall be deemed absolute, unless such contract for sale with such conditions and reservations therein, or a true copy thereof, shall be filed as directed in the succeeding section of this act." (§ 1, chap. 315, Laws of 1884; 3 R. S. [9th ed.] 2609.)

This statute, being one that changes the common law as it existed when it was passed, is to be held to abrogate it only so far as the clear import of the language absolutely requires. (*Tompkins* v. *Hunter*, 149 N. Y. 117–123.)

Let us examine the wording of the statute. It says every contract for the conditional sale of goods and chattels hereafter made, "which shall be *accompanied* by an *immediate delivery* and be followed by an actual and continued change of possession of the things contracted to be sold;" etc., etc.

This plainly cannot refer to a contract that is to be executed in the future, where the property is to be delivered in the future; it says, which shall be *accompanied* by an *immediate* delivery, that is, a delivery of the property sold at the time of the execution of the contract. And "be followed by an actual and continued change of possession of the things contracted to be sold;" that means an actual and continued possession from the time of the delivery of the goods when the contract is executed.

Very plainly this does not refer to a case where the thing sold is to be delivered long after the execution of the contract, nor to a case where the articles are to be manufactured, and where the contract contemplates after delivery and a future vesting of actual possession. Neither will the subsequent delivery of the property to the vendee relate back to the time of the execution of the contract and render such contract void from the beginning.

At the time of the execution of this contract it appears that the elevator was not in existence; it was to be thereafter made. It has been held that a parol contract for the sale of articles to be thereafter manufactured and delivered is not void under the Statute of Frauds. (*Parsons* v. *Loucks*, 48 N. Y. 17; *W. C. & M. Co.* v. *Holbrook*, 118 id. 586.)

By a parity of reason, it seems to me that the contract here does not come within the meaning of the statute providing for filing conditional contracts of sale, and, hence, that Allen had no property in or title to the elevator at the time he executed the chattel mortgages above referred to, and that the fact that the several parts of the elevator were upon his premises, waiting to be erected and put together to constitute the elevator, did not place the title to it potentially in him.

To be potentially in existence, the property or right out of which it is to arise, grow, or be created, must be legally in the possession of the person, as sown seed, when there is a sale or mortgage of

future crops of grass or grain; sheep, where there is a sale or mortgage of wool to be grown in the future, or cows, where there is a mortgage or sale of the increase.

Here there was no legal possession by Allen of the various parts of the elevator; there was no sale to him of the materials of which the elevator was to be composed; it was a complete elevator, erected and in place which was contracted for. If the materials on the ground, when the mortgage was given, had been destroyed by fire, the loss would have been the loss of the plaintiff, not of Allen.

While the parts and material of which the elevator was to be constituted were on Allen's premises, they were not in his possession; the workmen of the plaintiff were there to put them together and erect it; they were still not only in the legal but in the actual possession of the plaintiff; hence, Allen had no right to sell or mortgage them.

The reason for the enactment of the law providing for the filing of contracts for conditional sales was to protect those purchasing in good faith articles from those apparently having the title to the same, as evidenced by their possession.

There is nothing in this case that gives evidence that the defendant or any of the mortgagees was in anywise misled. They were all engaged in furnishing labor and material for the erection of the hotel; they knew that Allen was unable to pay for the work and materials done and furnished; that was the reason for their taking the mortgages; they saw the parts of the elevator upon the ground; they knew that they had yet to be put together and the elevator erected; they had every reason to believe that the concern engaged in furnishing the elevator was in the same condition in which they were, that is, unpaid and unsecured, and that by taking its property to secure their claims they were depriving it of what was, in equity, at least, its property.

The judgment and order should be reversed and a new trial granted, costs to abide the event.

All concurred.

Judgment and order reversed and a new trial granted, costs to abide the event.