## ANDREWS v. POWERS.

(Supreme Court, Appellate Division, Fourth Department. November 12, 1901.)

1. FIXTURES—VENDOR AND VENDEE—THIRD PARTIES—RIGHT TO REMOVE.

Plaintiff contracted with a vendee, in possession under agreement to purchase, to place in position a mantel, gas grate, and necessary fixtures, under which contract the vendee cut and removed the baseboard the width of the mantel, cut and removed a section of the floor the size of the hearth, removed a register used for heating, and the plaintiff fastened the mantel to the wall with four screws, made a bed of cement four inches below the level of the floor, and set the hearth in it, and screwed the gas grate to the gas pipe in the wall. *Held*, that such property became a part of the realty.

2. SAME—AGREEMENT AS TO TITLE—RIGHT OF VENDOR.

On the default of the vendee and a retaking of possession by the vendor, such property continued a part of the realty, notwithstanding an agreement between the plaintiff and the vendee that the title should remain in the plaintiff until paid for; and the vendor was not liable for conversion.

Appeal from Onondaga county court.

Action by Homer F. Andrews against John Powers to recover the value of a certain mantel, gas grate, and fixtures alleged to be the property of the plaintiff, and to be converted by the defendant to his own use. From a judgment of the county court affirming a judgment of the municipal court of the city of Syracuse in plaintiff's favor, defendant appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, and WILLIAMS, JJ. .

Edward W. Gregg, for appellant.

Frank Z. Wilcox, for respondent.

McLENNAN, J. The facts, so far as material, are not in dispute, and may be stated as follows: The plaintiff and one Newell were copartners, and as such were engaged in the manufacture and sale of mantels, gas grates, etc., in the city of Syracuse, N. Y., under the firm name of Andrews & Newell. On the 28th day of January, 1900, the firm entered into a contract with one Alice H. Archibald, by which it sold to her, and agreed to place in position, a mantel, gas grate, and necessary fixtures, in the house on the premises known as No. 102 Putnam street, in the city of Syracuse, which was occupied by Mrs. Archibald, for and at the agreed price of $60. Mrs. Archibald agreed to pay said sum by doing advertising to the value of $18, and the balance in monthly installments of $10 each. It was agreed that the title to the property should remain in Andrews & Newell until fully paid for. Mrs. Archibald agreed to make the place ready for the mantel, grate, etc., which she did by cutting and removing the baseboard the width of the mantel, cutting and removing a section of the floor the size of the hearth, removing a register used for heating the room, which occupied the place where the mantel was to stand. Thereupon Andrews & Newell placed the mantel, gas grate, and hearth in position in the place prepared by Mrs. Archibald, and as specified in the contract. They fastened the mantel to

the wall with four screws, made a bed of cement three inches below the level of the floor, and set the hearth in it, and screwed the gas grate to the gas pipe in the wall, which had connected with the register that had been removed. After the work was all completed, the room, except back of the mantel, was newly papered by Mrs. Archibald. At the time the contract for the mantel and fixtures was made, and when they were put in place, the defendant was the owner in fee of the premises known as No. 102 Putnam street, and Mrs. Archibald was simply a vendee, and in possession under an executory contract of sale made with the defendant. She failed to perform the conditions of such contract, and before the commencement of this action the defendant brought an action against Mrs. Archibald to foreclose said land contract, and, pursuant to its terms, default having been made, he took possession of the premises before the commencement of this action, and Mrs. Archibald had been ousted therefrom. Mrs. Archibald failed to pay for the mantel, grate, etc., according to the terms of the contract made with Andrews & Newell, there remaining unpaid on the contract price the sum of $45 when this action was brought. The firm of Andrews & Newell and said Newell assigned all their right, title, and interest in and to said contract, and in and to said property, to this plaintiff, before the commencement of this action. The plaintiff duly demanded the mantel, grate, etc., from the defendant, which was refused, and thereupon this suit was brought. It is conceded that the defendant did not in any manner consent to the contract made between Mrs. Archibald and Andrews & Newell, or know of its existence, and he did not know that the mantel, grate, etc., had been placed in the house until he obtained possession of the premises from Mrs. Archibald.

The only questions involved upon this appeal are: First, did the property in question, considering its character and the manner in which it was attached to the house of the defendant, become a part of the realty independent of the agreement made between the plaintiff's firm and Mrs. Archibald, the vendee in possession? And, if so, second, did the property continue to be real estate, and a part of the freehold, notwithstanding the agreement made between plaintiff's firm and Mrs. Archibald, of which the defendant had no knowledge? We think both questions must be answered in the affirmative. It is clear that, if there had been no agreement between the vendor and vendee in respect to the property in question, it would have become a part of the realty when attached to the house in the manner described. Ford v. Cobb, 20 N. Y. 344, was an action for conversion to recover the value of 23 salt kettles, which were affixed to the freehold by imbedding them in brick arches, but could be removed without injury to them by displacing a portion of the brick at inconsiderable expense, and the course of the manufacture required them to be thus removed and be reset annually. It was held that, independent of any agreement, the kettles became and were real property. Judge Denio, in writing the opinion of the court, said:

"I shall assume that if Titus (who was considered as owner of the land at the time he purchased the kettles) had paid for the kettles when he pur-

chased them instead of mortgaging them for the purchase price, the manner in which he annexed them to the freehold was such as would have converted them into a parcel of the realty, and that they would have passed to his subsequent grantee of the land, or would have gone to his heirs or devisees if he had died without conveying it. It is very clear that this would have been so at the common law, and independently of the provisions of the Revised Statutes. The case of the salt pans decided by Lord Mansfield, where it was held that fixtures very similar in their purpose and mode of annexation with those now in question belonged to the heirs, and not to the executors, has been very generally followed in England and in this country."

In 1 Washb. Real Prop. p. 7, the rule is laid down as between vendor and vendee and mortgagor and mortgagee as follows:

"If the owner of land provides anything of a permanent nature, fitted for and actually applied to use upon the premises by annexing the same, it becomes a part of the realty, though it might be removed without injury to the premises."

In Voorhees v. McGinnis, 48 N. Y. 278, the following language, used by Washburn, was quoted with approval:

"Between vendor and vendee or mortgagor and mortgagee it has been held that gas fixtures, including a gasometer and apparatus for generating gas, would pass with the house in which they were in use; but not between tenant and landlord, if put in by the tenant. * * * The shelves, drawers, and counter tables fitted in a store pass with the store as realty, * * * and things which may be fixtures often become so, or otherwise, from the circumstance that they have been actually fitted for and applied to the realty."

In Tifft v. Horton, 53 N. Y. 377, 13 Am. Rep. 537, which was an action to recover damages for the alleged conversion of a boiler and engine, it appeared that they were to be used in an elevator, and that they were placed upon a foundation outside of the elevator, and the engine house built over them, and the court said:

"It may, in this case, be conceded that, if there were no fact in it but the placing upon the premises of the engine and boilers in the manner in which they were attached thereto, they would have become fixtures, and would pass as a part of the realty."

In Smyth v. Sturges, 108 N. Y. 495, 15 N. E. 544, it was held that, independent of any agreement to the contrary, gas piping, partitions, lead pipe, plumbing work, water-closets, and basins, which were attached to a house in the ordinary way, became part of the realty. Many other cases might be cited in which it has been held—and we think no case can be found holding a different doctrine—that property of the character here in dispute, which had been annexed in the manner in which this was annexed, became a part of the freehold where there was no agreement which was effectual to prevent such result. The annexation of the property in question was quite as complete as a door or window would have been, and even more difficult to remove, and was quite as essential to the occupancy of the room, for the gas grate furnished the only means by which the room could be heated after the register had been removed. If the plaintiff in this case, pursuant to a contract with the vendee in possession, had caused an opening to be made in one of the partitions of the house, and placed in it a window or door, it would hardly be

claimed that he would have the right to remove such door or window, and leave the opening entirely unfilled; yet, when applied to an opening made in the floor, it is insisted that such course might be pursued. The articles in question were in every sense adapted to the use or purpose of the freehold, and this is regarded by all authorities as one of the tests by which to determine whether the chattel annexed did or did not become a part of the realty. Another test, while not controlling, is whether or not the removal of the chattel would cause serious injury to the realty. In the case at bar, as we have seen, five feet of the base board was cut away and removed; a considerable space was cut out of the floor, and filled with cement, upon which the hearth was laid; the register which had been used for the purpose of heating the room had been disconnected and removed; and it is apparent that, if the articles in question were removed, the defendant would have been put to considerable expense in order to put the room in suitable condition for occupancy. The entire room would have to be repapered, the base board would have to be replaced, the hole in the floor repaired, and the register put back in position; and when all was done a patched job would be the result. In view of all these considerations, we think it is established, both by reason and authority, that the mantel, grate, and fixtures, when attached to the house in question in the manner in which they were, became a part of the realty, and as such belonged to and became the property of the defendant, unless the agreement entered into between plaintiff's firm and Mrs. Archibald was effectual to prevent such result.

The agreement made between plaintiff's firm and Mrs. Archibald, to the effect that the articles in question should remain personal property, which was made without the knowledge or consent of the defendant, and under which the property was attached to his house, also without his knowledge or consent, in no manner bound the defendant, or affected his rights in the premises. A contrary rule would be unreasonable, and would subject the owners of real estate who may make an executory contract for the sale of the same to great hardship. If such is the rule, the only way in which the defendant can protect his property from defacement and injury, to a considerable extent, at least, is to assume the contract made by his vendee. If the plaintiff has the right to enforce his contract with Mrs. Archibald in that manner against the defendant, he might have placed a mantel and hearth in each room of defendant's house under similar contracts, and thus have compelled the defendant to pay for all of them, or submit to have a hole several feet square in the floor of each room in the house, a section of the wainscoting removed from each, and be under the necessity of repapering or redecorating the entire house. If the plaintiff's contention shall prevail, a vendee in possession, without the knowledge of the owner of the fee, may have articles of the character in question placed in every room in the house under a contract such as was made by this plaintiff, and compel the owner of such house to pay for such articles, or have his building seriously and permanently injured by the removal of such articles. We think no case can be found which supports such a doc-

trine. In Ford v. Cobb, supra, O. V. Titus, the person who gave the chattel mortgage on the kettles, was regarded as the owner of the land, and the case was decided upon that basis. In Tifft v. Horton, supra, the engine and boiler were sold to, and the agreement that they should remain the property of the vendor until paid for was made with, the owner of the fee of the real estate. The same was true in the case of Duffus v. Furnace Co., 8 App. Div. 567, 40 N. Y. Supp. 925; also in Improvement Co. v. Cosgrove, 47 App. Div. 35, 62 N. Y. Supp. 372. In every one of those cases, and in all the others to which attention has been called by the learned counsel for the plaintiff, where it has been held that fixtures of the character of those in question, although attached to the realty, might still be regarded as personal property, and removed, it will be found that it was so held because of the fact that an agreement to that effect had been made with the owner of the freehold, or that the chattels were attached to the realty with the understanding and intent on the part of such owner that they should remain personal property. The case of Chandler v. Hamell, 57 App. Div. 305 (s. c. 67 N. Y. Supp. 1068), states the correct rule, and is decisive of the case at bar. The headnote is as follows, and fully explains the question involved:

"Where the wife of a vendee of land under an executory contract of sale, with the consent of her husband, erects upon the land a wooden house resting upon blocks or posts, and without other foundation or fastening to the soil, a person who purchases the house from the wife acquires no title thereto as against the vendor, in the absence of proof that the house was erected with the consent of the vendor, or pursuant to an agreement between him and the vendee's wife."

In the case at bar, if the agreement which the plaintiff's firm made with Mrs. Archibald had been made with the knowledge or consent of the defendant, or if the mantel, grate, and hearth had been placed in the house with his knowledge and consent, and with the intent that they should retain their character as personal property, it is not doubted that such articles would not have become a part of the realty, and the defendant, if he had refused to surrender possession of the same after demand duly made, would be liable to the plaintiff for their value. But, as we have seen, the defendant had no such knowledge, gave no such consent, and, we think, was under no obligation to have his house mutilated because of the contract made between the plaintiff and another, of which he had no knowledge. It follows that the judgment of the county court and of the municipal court should be reversed, with costs.

Judgment reversed, with costs. All concur.