(41 Misc. Rep. 177.)

### DUNTZ v. GRANGER BREWING CO. et al.

(Supreme Court, Special Term, Columbia County.   July, 1903.)

1. FIXTURES—CONDITIONAL SALE OF CHATTELS—INTENTION.

Where an owner of realty, on a corporation furnishing chattels to him, agreed that the title to the chattels should not pass until paid for, such agreement operated to prevent such chattels from becoming fixtures, unless their removal should seriously injure them or the realty.

2. SAME—SUBSEQUENT MORTGAGE OF REAL ESTATE.

Where, after an owner of land had purchased chattels under an agreement that they should remain the property of the seller until paid for, he executed a mortgage of the real estate and the chattels as fixtures to a third person, such mortgage was subsequent to, and did not prejudice, the lien of the vendor of the chattels for the unpaid balance of the purchase price thereof.

---

¶ 1. See Fixtures, vol. 23, Cent. Dig. §§ 5, 42, 44–46, 57.

3. SAME—LIEN LAW—CONDITIONAL SALE—FILING—GOODS TO BE MANUFACTUR-
ED BY SELLER.

Lien Law, § 112 (Laws 1897, p. 540, c. 418), declaring that a contract
for a conditional sale of chattels, "accompanied by immediate delivery,"
providing that the ownership is to remain in the seller until payment,
shall be void, as against a subsequent mortgagee, unless the contract is
filed, does not require the filing of a conditional contract for the sale of
chattels to be manufactured by the seller.

Action by Mark Duntz, as trustee, etc., against the Granger Brew-
ing Company and others, for the foreclosure of a mortgage on real
estate.  Judgment for defendant Pfaudler Company.

The defendant Pfaudler Company defends this action, claiming that certain
of the property sought to be foreclosed herein is personal property, and not
subject to the lien of the plaintiff's mortgage.  On the 12th day of November,
1898, the Pfaudler Vacuum Fermentation Company, the predecessor in interest
of the Pfaudler Company, entered into a written contract with the Granger
Brewing Company, whereby it agreed to erect in the latter company's brew-
ery its plant for operating its system of manufacturing lager beer, including
three glass-enameled steel tanks, of four rings each, with the necessary
vacuum pumps, pipes, fittings, and appliances belonging to said system, and
also five 110-barrel glass enameled steel tanks to be used as chip tanks.  The
said system of manufacturing beer and said tanks used in said system were
covered by letters patent granted by the United States to the said Pfaudler
Vacuum Fermentation Company.  And by the said agreement between the
last-mentioned company and the Granger Brewing Company, the brewing
company was to receive license for the use of the said system and of the said
tanks.  But it was provided that such license should cease in case payment
was not made as provided by the terms of said contract.  The brewing com-
pany agreed that it would prepare proper openings in its building, through
which conveniently to put said plant into said brewery; and it was further
agreed "that the title to and ownership of all the property covered by this
contract, including such additional tanks as may be furnished under the
provisions of this contract, are and shall continue to be in the party of the
first part until the same shall be fully paid for to the party of the first part."
This agreement was not filed.  On the 1st day of September, 1900, the mort-
gage in question, which is sought to be foreclosed in this action, was executed
and recorded, which mortgage specifically enumerated the property claimed
by the Pfaudler Company herein, and contained a provision that the per-
sonal property therein described should be real estate, for all the purposes
of such mortgage, and should be held and taken to be fixtures and appur-
tenances of the mortgaged premises.  After the execution of the last-men-
tioned mortgage, and in August, 1901, the Granger Brewing Company pur-
chased of the Pfaudler Company an additional lot of said patented machinery,
consisting of five two-ring steel chip tanks, with the usual fittings; such pur-
chase being on the same conditions as the original purchase in 1898, and
having been provided for by the provisions of said contract of November 12,
1898.  The property so furnished by the Pfaudler Company was not manu-
factured at the time the contract was made, but was subsequently manu-
factured; and that part thereof which was first furnished to the brewing com-
pany was installed in April, 1899, five months after making the contract.  The
tanks are large and cumbersome articles, but stand on the floor, being held in
position by their own weight.  At the time they were introduced in the build-
ing in question, a portion of one side of the building, which was of brick and
in process of construction, was left open to receive some of them.  The tanks
may be taken apart and removed by sections, but these separate sections
cannot be taken from the building without enlarging somewhat the openings
surrounding the doors or windows.  The different parts of the machinery are
connected with each other, and with other parts of the building and appur-
tenances thereto, by pipes, but they may be disconnected by the usual methods
known to steamfitters or other proper mechanics.  On the property first in-
stalled as above set forth there is due and unpaid to the Pfaudler Company

$4,000, with interest from June 7, 1902, and on the property installed in 1901 there is due the sum of $1,300, with interest from May 20, 1902.

Thomas K. Smith, for plaintiff.

McGuire & Wood, for defendant Pfaudler Company.

COCHRANE, J.  It may be assumed that, but for the agreement between the Pfaudler Company and the Granger Brewing Company that the title to and ownership of the property in question should continue to be in the Pfaudler Company until paid for, such property would be fixtures, on account of its nature and the manner of its annexation to the realty.  It is settled, however, in this state, that articles which would ordinarily become fixtures may retain their character as personal property by reason of a special agreement to that effect between the parties.  It is also settled that the rights of the mortgagee of the realty are dependent upon the character of the materials as determined by the agreement between the vendor and vendee, regardless of his knowledge or ignorance of that agreement. Tifft v. Horton, 53 N. Y. 377, 13 Am. Rep. 537; Ford v. Cobb, 20 N. Y. 344; Sisson v. Hibbard, 75 N. Y. 542; Godard v. Gould, 14 Barb. 662; Kerby v. Clapp, 15 App. Div. 37, 44 N. Y. Supp. 116; New York Investment Co. v. Cosgrove, 47 App. Div. 35, 62 N. Y. Supp. 372; Duffus v. Howard Furnace Co., 8 App. Div. 567, 40 N. Y. Supp. 925.  Such an agreement indicates an intention that the property shall not, by annexation, become a part of the freehold, and as a general rule such indication will prevail.

In the case first above cited it was said that "the limitation to this is where the subject or mode of annexation is such as that the attributes of personal property cannot be predicated of the thing in controversy, as where the property could not be removed without practically destroying it, or where it, or part of it, is essential to the support of that to which it is attached."  It is doubtless true that the property involved in this case may be removed from the building where it now is, substantially in its entirety, and may be set up and used in any other place adapted therefor.  Its place in the brewery may also be supplied by other similar machinery, or by machinery of a different system and style, and such substitution would not destroy the efficacy of the brewing company's property as a place to manufacture beer.  The pumps and other appliances supplied by the Pfaudler Company are connected with each other and with the boiler, and with other parts of the building and the machinery therein contained.  But such connection is not of such a nature as to destroy or greatly impair the usefulness of the property which would remain after removing the property claimed by the Pfaudler Company.  Connections could still be made with other property which might be substituted in the place of the latter.

Nor is the fact that openings would have to be made in the side of the building a controlling circumstance.  It is true that the door or window spaces would have to be enlarged to permit the removal of the property in question.  The building, however, is of brick, and the enlargement of such places or the creation of new ones may be effected and the building restored at comparatively small expense,

and without damage or injury to the building. It is not a case where the building would be substantially destroyed or its usefulness seriously impaired, nor where it could only be restored to its former condition at great expense.

In all of the cases above cited it was held that the manner in which the property was attached to the realty did not deprive it of its character as personal property, there being an agreement in each case with the person furnishing the property that the title thereto should not pass until paid for. In Tifft v. Horton, it was said at page ·384, 53 N. Y., 13 Am. Rep. 537:

"It appears that the boilers and engine cannot be removed without some injury to the walls built up about them, and which are a part of the real estate, yet this fact will not debar the plaintiffs. The chattels have not become a part of the building; the removal of them will not take away or destroy that which is essential to the support of the main building, or other part of the real estate to which they were attached; nor will it destroy or of necessity injure the chattels themselves; nor will the injury to the walls about them be great in extent or amount. So that limitation hereinbefore stated does not apply."

In Ford v. Cobb the property which was involved in the action was placed in arches in such a manner that it could not be removed except by tearing off a portion of the upper bricks of the arch. In Godard v. Gould the machinery was placed in a building erected to receive it. It was put up by a person sent by the vendor for that purpose. It was fastened to timbers with screws and bolts. It was in different parts, and the different machines were fastened to the timbers in the building, and formed one continuous machine. The machine could not be taken out whole without cutting away the walls of the building. None of the frames could be taken out whole without cutting away the walls of the building, but the machine could be taken apart and laid on the floor in half a day, with hands enough. In Sisson v. Hibbard, in removing the engine and boiler from the building, part of the boards from one side of the building were necessarily removed, and the arch which supported the boiler was partially torn down; but it was held that the engine and boiler could be and were removed without serious damage to the freehold, and without injuring or impairing their own character or value. In Duffus v. Howard Furnace Company the furnace was set up in the cellar of the house, and connected with a smoke pipe extending into the chimney, and hot-air pipes made to extend through the house, and there was a cold-air box also connected with the furnace. In New York Investment Co. v. Cosgrove, the property consisted of water-closets, wash basins, tubs, sinks, and similar articles, commonly known as "plumber's fixtures." In Kerby v. Clapp the ranges and heaters which were the subject of the controversy were connected with the water-pipe system of the house. I am unable to see that any stronger case exists here, presenting a reason why the agreement of the Pfaudler Company should be ignored, than was presented in the cases above referred to.

The authorities cited by the defendant are not applicable. In Fryatt v. Sullivan Co., 5 Hill, 116, and Manufacturers' Nat. Bank v. Rober, 19 Wkly. Dig. 476, the property could not be removed without de-

stroying the buildings in which it was placed. In Snedeker v. Warring, 12 N. Y. 170, and Buckley v. Buckley, 11 Barb. 43, and McRea v. Central Nat. Bank of Troy, 66 N. Y. 489, there were no agreements with the persons furnishing the chattels that the title to the same was not to pass until paid for. In McFadden v. Allen, 134 N. Y. 489, 32 N. E. 21, 19 L. R. A. 446, it was held that the plaintiff, who claimed the right to remove the improvements to the real property, was the equitable owner of such real property, and that he had joined in a subsequent mortgage thereon, and that such subsequent mortgagee became owner of the premises on a foreclosure sale of a prior mortgage to which foreclosure action McFadden was a party, and that his rights were extinguished in such foreclosure action. In Andrews v. Powers, 66 App. Div. 216, 72 N. Y. Supp. 597, the agreement was made with the contract vendee, and not with the owner of the real estate; and it was said at page 222, 66 App. Div., and page 601, 72 N. Y. Supp., that if the agreement had been made with the knowledge or consent of the owner of the premises, or if the chattels "had been placed in the house with his knowledge and consent, and with the intent that they should retain their character as personal property, it is not doubted that such articles would not have become a part of the realty."

The trend of the authorities is that, where there is an agreement between the owner of the realty and the person furnishing the chattels that the title to such chattels shall not pass until paid for, such agreement evidences an intention that the property shall remain personal property, and is controlling, unless the removal of the chattels would cause serious injury to the realty or to the chattels themselves, or unless some other peculiar reason exists for not giving effect to such agreement. I do not think that such reason exists in this case, and that the property furnished by the Pfaudler Company is to be deemed personal property, and not a part of the realty.

The provision in the real estate mortgage that the personal property therein described should be real estate, for the purposes of such mortgage, while binding on the parties to such mortgage, cannot affect the contract of the Pfaudler Company made prior to such mortgage, nor does it reflect any light on the intention of the parties in making such prior contract.

There remains for consideration the effect of the failure to file the conditional contract between the Pfaudler Company and the brewing company. Section 112 of the lien law (Laws 1897, p. 540, c. 418) provides that "all conditions and reservations in a contract for the conditional sale of goods and chattels, accompanied by immediate delivery and continued possession of the thing contracted to be sold * * * shall be void," etc., unless filed. The contract here under consideration was not for the sale of goods and chattels in existence, but was a contract to manufacture and deliver in the future the property involved. It is undisputed that such property was manufactured after the execution of the conditional contract, and was not delivered or placed in the brewery for five months thereafter. The contract was not "accompanied by immediate delivery and continued possession of the thing contracted to be sold," and hence was not

required to be filed by the provisions of the lien law. Graves Elevator Co. v. Callanan, 11 App. Div. 301, 42 N. Y. Supp. 930. The same principle is recognized in Grant v. Griffith, 39 App. Div. 107, 56 N. Y. Supp. 791, affirmed on opinion below in 165 N. Y. 636, 59 N. E. 1123.

I have been referred to the case of Schmaltz v. York Manufacturing Co., 204 Pa. 1, 53 Atl. 522, 59 L. R. A. 907—a Pennsylvania case, in which, as it is claimed, a different construction is placed on the provisions of our lien law. It is said in the opinion in that case that the courts of New York hold a contrary view, and such being the case the latter authorities must be followed here.

It follows that the lien of the Pfaudler Company on the property claimed by it under the conditional contract of sale is superior to the lien of the mortgage, to foreclose which this action is brought.

Ordered accordingly.