(79 Misc. Rep. 496.)

BREAKSTONE et al. v. BUFFALO FOUNDRY & MACHINE CO.

(Supreme Court, Trial Term, New York County.   February, 1913.)

1. NEW TRIAL (§ 91*)—GROUNDS—MISTAKE BY COUNSEL.
    That plaintiffs' counsel mistakenly concluded that a ruling of the trial court disposed of plaintiffs' case, and so stated, whereupon the complaint was dismissed, was ground for a new trial.
    [Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 184–187; Dec. Dig. § 91.*]

2. SALES (§ 479*)—CONDITIONAL SALE—"RETAKING."
    Within the meaning of Personal Property Law (Consol. Laws 1909, c. 41) § 65, relative to the retaking of chattels sold under a conditional sale contract, the "retaking" is not postponed until the seller has transported the chattel to some place where it can be sold and delivered, but occurs when the seller obtains absolute possession, control, and authority over the chattel.
    [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1418–1432, 1434–1438; Dec. Dig. § 479.*]

3. SALES (§ 479*)—CONDITIONAL SALE—RETAKING—WHAT CONSTITUTES.
    That a car, upon which a seller's agent had loaded parts of a machine previously sold and delivered under a conditional sale contract, broke

down on a siding which was on the buyer's premises, but was owned and controlled by the railroad company, did not prevent the act of loading from constituting a "retaking," within Personal Property Law (Consol. Laws 1909, c. 41) § 65, relative to the retaking and subsequent sale of property by the seller.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1418–1432, 1434–1438; Dec. Dig. § 479.*]

**4. SALES (§ 479*)—CONDITIONAL SALE—RETAKING—WHAT CONSTITUTES.**

That a machine was sold f. o. b. Buffalo did not prevent the act of the seller's agent in loading the machine onto cars at the buyer's factory at Truxton from constituting a "retaking," within Personal Property Law . (Consol. Laws 1909, c. 41) § 65, relative to the retaking of property sold under a conditional sale contract, especially where the contract stated that the machine should be used only at the buyer's factory.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1418–1432, 1434–1438; Dec. Dig. § 479.*]

**5. BANKRUPTCY (§ 268*)—CONDITIONAL SALE TO BANKRUPT—FAILURE TO SELL PROPERTY RETAKEN—RIGHT OF ACTION.**

Under Personal Property Law (Consol. Laws 1909, c. 41) § 65, providing that where articles sold under a conditional sale contract are retaken, and are not sold at public auction within 30 days after expiration of the redemption period, the buyer "or his successor in interest" may recover the amount paid under the conditional sale contract, the assignees of a trustee in bankruptcy of the buyer's estate were entitled, as against an objection that their rights were too remote, to sue a seller, who neglected to sell property retaken, for the payments made by the buyer.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 372–379; Dec. Dig. § 268.*]

**6. BANKRUPTCY (§ 268*)—CONDITIONAL SALE TO BANKRUPT—FAILURE TO SELL PROPERTY RETAKEN—RIGHT OF ACTION—ASSIGNMENT.**

An assignment to plaintiffs by the trustee in bankruptcy of a buyer of all the buyer's interest in a machine bought under a conditional sale contract conveyed to them the right of action given by Personal Property Law (Consol. Laws 1909, c. 41) § 65, for the recovery of payments made under a conditional sale contract, where the property is retaken and not sold at public auction within 30 days after expiration of the redemption period, though the right of action did not accrue until after the bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 372–379; Dec. Dig. § 268.*]

**7. SALES (§ 481*)—FAILURE TO SELL PROPERTY RETAKEN—WAIVER.**

The right of action of a buyer or his successor, under Personal Property Law (Consol. Laws 1909, c. 41) § 65, for the recovery of payments where no timely sale at public auction is made of property sold under a conditional sale contract and retaken by the seller, can be waived only by express waiver, and not by implication.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1449–1455; Dec. Dig. § 481.*]

**8. SALES (§ 454*)—"CONDITIONAL SALE."**

Where a contract ordered a machine to be shipped, and delivery of the machine followed, with title retained in the seller, the transaction was a "conditional sale," within the Personal Property Law, and not an order for the manufacture of a machine.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1324, 1325, 1333, 1334; Dec. Dig. § 454.*

For other definitions, see Words and Phrases, vol. 2, pp. 1408–1410.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by Joseph Breakstone and another against the Buffalo Foundry & Machine Company. The complaint was dismissed, and plaintiffs move for a new trial. Motion granted.

Abraham Brekstone, for plaintiffs.
Frederick C. Slee, of Buffalo, N. Y., for defendant.

WHITAKER, J.  [1] When this case came on for trial, the court ruled that it would hold that the time within which defendant had to regain possession of the machine and advertise the sale did not begin to run until the defendant had time by the use of ordinary diligence to regain full possession of the machine. Plaintiffs' counsel, it seems, mistakenly concluded that the ruling disposed of plaintiffs' case, and so stated. Thereupon the complaint was dismissed. Then plaintiffs' counsel moved for a new trial upon the ground of his mistake in making such a statement. I think that a new trial should be granted plaintiffs.

[2] The defendant failed to comply with the statute. It appears by the stipulation entered into between plaintiffs and defendant that the last of the machine was loaded by defendant's agents on the car or cars of the Lehigh Valley Railroad Company on June 29, 1911, and that from that date plaintiffs had no control or authority over said machine; but the said machine was absolutely under the control of defendant, and the said 29th day of June was the day of retaking by the vendor. The fact that one of the cars broke down, and that the new car was not loaded until July 11th, did not alter defendant's control of the chattel, as the machine was just as much under defendant's control after the breakdown of the car and during the reloading as it was when defendant took it in charge on the said 29th day of June. The retaking of a chattel in such a case does not occur when the vendor has transported the chattel to some place where it could be sold and delivered; but the retaking occurs when the vendor obtains absolute possession, control, and authority over the chattel. In the case at bar defendant obtained such possession, control, and authority on the said 29th day of June. Be that as it may, of the cars carrying the various parts of the machine the last car arrived in Buffalo on July 15th, so that the entire machine was in Buffalo long before the sale period began, which was on July 29th; 30 days after the retaking of June 29th.

[3] Defendant contends that there was then no retaking, as the third car *had not left plaintiffs' plant, but was loaded* upon the *siding of the plaintiffs*, and that there the car broke down, necessitating a transfer to another car, which did not leave plaintiffs' plant until July 11th. The stipulation of facts agreed upon and introduced in evidence states that defendant's servant went to plaintiffs' plant and presented to plaintiffs a letter of introduction, which was made a part of the said stipulation, and then proceeded to remove the machine. He loaded and started one car for Buffalo.

"Thereafter and on June 20th Lavett [defendant's servant] similarly requisitioned two cars which were received June 26th. * * * Thereafter and *on June 29th he loaded the balance of said machine.*"

141 N.Y.S.—11

I am of the opinion that this act of loading the balance of the machine on June 29th constitutes the completion of the act of retaking— the defendant had hired the cars and had loaded the last of the parts of the machine on June 29th. From that date the machine was absolutely under the control of defendant. Defendant could have shipped it to any place it desired, and plaintiffs could not have controlled the disposition of the machine after June 29th, as the railroad company had contracted with the defendant and defendant had delivered the last of the machine to the railroad company for transportation. The said stipulation further states:

"The cars were loaded alongside of said creamery upon a siding *used by plaintiffs and owned by* the Lehigh Valley Railroad Company. * * * "

Defendant's contention that because the third car had not left the siding it (defendant) had no possession is not sound, as the plaintiffs did not own or control the siding. The siding was owned by the railroad and the cars were controlled by defendant.

[4] Defendant's further contention that, because the machine was sold f. o. b. Buffalo, the natural point of retaking would be Buffalo, is not sound. The contract itself states that the machine shall be *used only* at the factory of plaintiffs at Truxton, Cortland county. Plaintiffs had no right under the contract to transfer it to Buffalo, and defendant, to "retake" it, must have gone to the place where it was, and taken charge and control of it, which it did, and took the last of it into its possession for transportation on the said 29th day of June. The stipulation states that subsequently the car broke down, and that the machine was removed to a new car by the same contractor who had assisted defendant's servant, Lavett. I do not see anything to indicate that the breaking down of the car put the\machine, or any part of it, again in the possession of the plaintiffs. The broken-down car and the substituted car both belonged to the railroad company. Defendant's servant's contractor transferred the machine from one car to the other, and I do not think that plaintiffs could then, at the time of the breakdown of the car, have secured possession or control of the machine, had they attempted so to do.

Defendant quotes at length from Sloan v. National Surety Co., 74 App. Div. 420, 77 N. Y. Supp. 428, as to the taking of possession. That case is dissimilar to the case at bar. In that case it was held that the mere laying of hands on the property in question and then leaving it was not sufficient to give possession, but that there must be *actual* possession. In the case at bar the defendant took actual possession of the machine, and the last part of the machine passed into defendant's possession on the 29th day of June. After the said 29th day of June plaintiffs did not have the actual or constructive possession of the said machine. The case of Sigal v. Hatch Co., 61 Misc. Rep. 332, 113 N. Y. Supp. 818, cited by defendant, is not in point, as in that case the chattel was under the control of a city marshal, while in the case at bar the persons who took charge of the machine on June 29th were defendant's agents and acting for the defendant. Under section 65 of the Personal Property Law (Consolidated Laws 1909, c. 41), plaintiffs then had 30 days to redeem, which gave them to July 29th.

There was no redemption, and under the said section defendant was then required to sell the machine within the next 30 days, to wit, before August 28th. This was not done by defendant, and plaintiffs' right of action thereupon accrued.

[5] Defendant's contention that plaintiffs' rights are acquired from a vendee "too remote" and not authorized by the statute, which limits the right of action to the conditional vendee and immediate successor, is not sound. The statute says (Pers. Prop. Law [Consol. Laws 1909, c. 41], § 65) that "the vendee or his successor" may recover. Chicago R. Eq. Co. v. Merchants' Bank, 136 U. S. 268, 10 Sup. Ct. 999, 34 L. Ed. 349, cited by defendant, is not in point. That case went to the Circuit Court of the United States for the Western District of Wisconsin and arose over a note executed in Illinois, and was governed by the statutes of Illinois. The court there held that the title remained in the vendor until the notes were paid; *the title being so retained only by way of security* for the payment of the notes, and the agreement for the retention for that purpose being a short form of chattel mortgage.

Defendant also maintains that the trustee in bankruptcy had no interest in the contract herein or in this cause of action. Defendant submits that the trustee acquires six classes of property of a bankrupt, the fifth class of which is property which he could have transferred prior to bankruptcy or which could have been levied upon. Plaintiffs' rights herein are easily derived from the said fifth class of section 70 of the Bankruptcy Law (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451]), and are not after-acquired property, as maintained by defendant. The case of Kittridge v. McLaughlin, 33 Me. 327, cited by defendant, is not in point. Therein the court say:

"Such [interests] as he [the bankrupt] might acquire after adjudication *by favor of another* did not pass to the assignee."

In that case the act of another bestowed a right of redemption on the bankrupt after bankruptcy, and so the right did not pass. Also Matter of Ghazal, 174 Fed. 809, 98 C. C. A. 517, cited by defendant, is not in point. That case related to an award by the secretary of the treasury for information against smugglers. No award had been made at the time of the bankruptcy, and the bankrupt then had no claim whatever on any award. *Subsequently* to his adjudication in bankruptcy the award was made and passed to the bankrupt, and not to his trustee for the benefit of creditors. Whitlock's License, 22 Am. Bankr. Rep. 262, the other case cited by defendant on this point, does not apply to the case at bar. That was a case where a liquor license was granted to a person *after* he had been adjudicated a bankrupt. The court held that it belonged to him personally, and not to his receiver in bankruptcy.

The cases cited by defendant to sustain the contention that the contract herein is personal to the vendor and vendee and not assignable do not support that contention. Arkansas Co. v. Belden Co., 127 U. S. 379, 8 Sup. Ct. 1308, 32 L. Ed. 246, was a case arising in Colorado, and related to the delivery from time to time of the products of a mine

to a partnership, and it was held that the partnership could not assign its interest in the contract so far as regards future deliveries of the ore. Defendant submits that this case was approved in New York Bank Note Co. v. Hamilton Bank Note E. & P. Co., 28 App. Div. 411, 50 N. Y. Supp. 1093, and refers to page 422. As a matter of fact, in the New York Bank Note Case at page 422 of 28 App. Div., at page 1099 of 50 N. Y. Supp., the court say:

"We do not think, however, that the general rule applies to the facts of this particular case."

And, further, the New York Bank Note Case was reversed by New York Bank Note Co. v. Hamilton Bank Note E. & P. Co., 180 N. Y. 280, 73 N. E. 48. In 180 N. Y. 280, 73 N. E. 48, however, it was held that the contract was not assignable without consent upon the ground that:

"The press company is not obliged to intrust its money collected on the sale of the presses to the responsibility of an entirely different corporation from that with which it had contracted."

It would seem in that case that fiduciary capacity existed through the collection of the moneys. No such situation existed in the case at bar, and the vendee's assignee could carry out the contract as well as the vendee. All the vendor required was the payment of the installments. It is not likely that the vendor would have objected to an assignment, if payments had been regularly made by the assignees. Moreover, the New York Bank Note Case, 180 N. Y. 280, 73 N. E. 48, is followed in Quinn v. Whitney, 204 N. Y. at page 369, 97 N. E. 726, where the court say:

"The general rule is that an executory contract not necessarily personal in its character, which can, consistent with the rights and interests of the adverse party, be sufficiently executed by the assignee, is assignable in the absence of agreement in the contract."

And a subsequent motion to reargue this case was denied. 204 N. Y. 688, 98 N. E. 1113.

Jetter Brewing Co. v. Scollan, 15 Am. Bankr. Rep. 300, 48 Misc. Rep. 546, 96 N. Y. Supp. 274, cited by defendant, is not in point. In that case the contract called for the sale of a certain brand of beer under a lease and controlled future deliveries. There are no such questions in the case at bar. The Alabama case cited by defendant (Chilton v. Cabiness, 14 Ala. 447, decided in June, 1848) does not strengthen its contention. In that case it was held:

"As it did not appear that the notes ever passed from the guardian to the bankrupt, or that he had ever come to a final settlement with the guardian, or how the accounts stood between the guardian and his ward, as the ward herself could not have sued at law upon the notes, no such right passed to the assignee in bankruptcy of her husband."

[6] Defendant further contends that the sale to plaintiffs did not carry this right of action, and that the trustee in bankruptcy did not assign the contract. The order of the United States District Court and the bill of sale, through which plaintiffs hold title, and which were introduced in evidence, dispose of "all the right, title, and interest of

the bankrupt in and to" the machine. This right of action follows, as the right arises independently of the contract and is conferred by the statute. Pers. Prop. Law (Consol. Laws 1909, c. 41) § 65. The sale remained a conditional sale as much after the plaintiffs took the property as before. And although the right of action did not accrue until after the bankruptcy the right was in the plaintiffs as the successors of the vendee referred to in the statute.

[7] Defendant contends that the claim in suit was waived by the original vendee. In the first case cited thereunder by defendant (Fairbanks v. Nichols, 135 App. Div. 298, 119 N. Y. Supp. 752) the waiver of the vendee was held valid, the vendee having surrendered the property for the reason that it was not worth the amount then unpaid, and the amounts paid amounted to no more than the fair rental value of the property while used by the vendee. At the end of the decision the court say:

"Had plaintiff stood by his rights and insisted that he had an equity in the property, the defendants might not have deemed it to their advantage to take the property back and thus incur the trouble and expense of a public sale under the statute and of accounting to plaintiff. *We therefore place the decision upon that ground, and refrain from expressing an opinion on any other question.*"

Even this decision was rendered by a divided court; Ingraham and Scott, JJ., dissenting. In a dissenting opinion Justice Ingraham says:

"I think this was clearly a conditional sale, and that the parties so intended. If all of the so-called rent had been paid, the title would have rested in the plaintiff. * * * The defendant has received a certain amount on account, and the Lien Law applies."

Hurley v. Allman Gas Engine & M. Co., 144 App. Div. 300, 129 N. Y. Supp. 14, cited by plaintiffs, clears the doubt raised by the Fairbanks Case, supra. In this case the court held that:

"Where the vendor * * * retakes the goods on default of payments and neglects within 30 days to sell the same at public auction, it is liable for the amount paid under the contract."

At the close of the opinion, 144 App. Div. 305, 129 N. Y. Supp. 18, the court say:

"The clause in the contract * * * which is claimed to constitute a waiver is entirely silent as to a subsequent sale as directed by the statute in question. There is, therefore, no *express waiver* of the statutory requirements. *None should be implied as against the policy of the statute,* assuming such a waiver in advance permissible."

Davis v. Bliss, 187 N. Y. 77, 79 N. E. 851, 10 L. R. A. (N. S.) 458, cited by plaintiffs, holds that such a waiver as in the case at bar must be considered as modified by section 116 of the Lien Law (Laws 1897, c. 418), by which it seems that the vendee or his successor is entitled to the sale or recovery as provided by the statute. Roach v. Curtis, 191 N. Y. 387, 84 N. E. 283, cited by plaintiffs, arose from a contract, which provided for a private instead of a public sale. At page 391 of 191 N. Y., at page 284 of 84 N. E., the court say:

"In other words, if there was any effectual waiver by reason of the insertion of the clause in the contract permitting a private sale, it extended

no further than to the manner of selling; every other privilege which the statute confers upon the vendee was retained. Of these privileges, perhaps the most important was that of recovering from the vendor the amount paid on account of the purchase price, * * * and this remained wholly unaffected by the consent * * * that the sale * * * need not be * * * at public auction. * * * There were some other claims of waiver, but they presented questions of fact which were disposed of by the verdict."

The decision in Roach v. Curtis, supra, is referred to in Watertown National Bank v. Bagley, 134 App. Div. 831, 836, 119 N. Y. Supp. 592, 597, where the court say:

"This law [Lien Law] was also enacted for the protection of poor people against avaricious vendors, * * * and its salutary purpose ought not to be frittered away by agreements of waiver."

Woodman v. Needham Piano & Organ Co., 47 Misc. Rep. 683, 94 N. Y. Supp. 371, cited by defendant, was an Appellate Term decision, 1905. This case is overruled by the Appellate Division in Hurley v. Allman Gas Engine & M. Co., supra, and in the Hurley Case the court refers to the Woodman Case on page 303 of 144 App. Div. (129 N. Y. Supp. 14). In Montague v. Wanamaker, 67 Misc. Rep. 655, 124 N. Y. Supp. 808, cited by defendant, which is a Special Term decision, 1910, there was an *express waiver*. And in addition thereto the court said:

"I am of the opinion that the plaintiff *by his acts* waived the statute, and that his conduct estops him from claiming otherwise."

That case does not strengthen defendant's contention, and any weight which it might have is destroyed by the Hurley Case, supra, decided in the Appellate Division in 1911. Adler v. Weis & F. Co., 66 Misc. Rep. 20, 119 N. Y. Supp. 634, cited by defendant, is also a Special Term decision, and differs from the case at bar, as in that case the court said:

"The contract *expressly waives* the statutory requirement of a sale within 60 days, and permits it to be made at any time."

Warner v. Zeuchel, 19 App. Div. 494, 46 N. Y. Supp. 569, cited by defendant, is referred to in Hurley v. Allman, supra, at page 304 of 144 App. Div. (129 N. Y. Supp. 14), and distinguished from the Hurley Case. Any weight which this case may lend to the defendant's contention is destroyed by the Hurley Case. Butler v. People's Furniture Co. (Sup.) 124 N. Y. Supp. 645, cited by defendant, is a Special Term decision. The waiver in that case might be considered an express waiver:

"I do hereby specifically release and waive any and all benefit and advantage by virtue of any and all statutes contrary to and inconsistent with the terms of this lease."

This case cannot strengthen defendant's contention, in view of the Hurley Case, supra.

[8] Defendant contends that the statute does not apply to a machine to be manufactured, but only to a chattel in existence and delivered contemporaneously with the making of a contract. There is nothing in the statute to bear out that contention. The statute

refers to the sale of "goods and chattels" and "articles." The con-tract in the case at bar does not state that the machine was to be manufactured. The contract says:

"Please ship me the following apparatus: One (1) vacuum rotary drum dryer," etc.

As far as the contract shows, the machine may have been already constructed at the time the contract was made. It was not an order to "build and ship" a machine, but an order to "ship" the machine. Graves Elevator Co. v. Callanan, 11 App. Div. 301, 305, 42 N. Y. Supp. 930, is cited by defendant, but is not in point. That case re-lates to the filing of conditional contracts and their validity as to subsequent purchasers and mortgagees, and has no bearing on the case at bar. The two cases included by defendant in this citation, to wit, Parsons v. Loucks, 48 N. Y. 17, 8 Am. Rep. 517, and War-ren C. & M. Co. v. Holbrook, 118 N. Y. 586, 23 N. E. 908, 16 Am. St. Rep. 788, are not relevant, but relate to the statute of frauds. Washington Trust Co. v. Morse Iron Works & D. D. Co., 106 App. Div. 195, 94 N. Y. Supp. 495, cited by defendant, does not bear out defendant's contention. That case simply held that, where property acquired by conditional sale was subsequently mortgaged, the con-ditional vendor must be paid before the mortgagee. That decision was modified in Washington Trust Co. v. Morse I. Works & D. D. Co., 187 N. Y. 307, 79 N. E. 1022, but not upon defendant's point.

Crocker-Wheeler Co. v. Genesee R. Co., 140 App. Div. 726, 125 N. Y. Supp. 721, cited by plaintiffs, indicates that no great distinc-tion would be made between goods in existence or yet to be man-ufactured. In that case there was also the question of bankruptcy, and the trustee sold the rights of the bankrupt, and the court also points out (140 App. Div. 728, 125 N. Y. Supp. 721) that the Graves Elevator Case, supra, and Duntz Case, 41 Misc. Rep. 177, 83 N. Y. Supp. 957, were weakened by the amendment of 1904, which struck out the word "immediate" and the phrase "and continued possession" from the statute, which had formerly read "by imme-diate delivery and continued possession of the thing contracted to be sold." Duntz v. Brew. Co., 41 Misc. Rep. 177, 83 N. Y. Supp. 957, the last case cited by defendant, is not in point. That case con-strues the provisions of the Lien Law (Laws 1897, c. 418, § 112) relative to the filing of conditional contracts, and holds that the stat-ute does not require the filing of the contract where it relates to goods to be manufactured by the vendor. The case does not oth-erwise refer to the point in question in the case at bar.

Moreover, sections 110 to 118, chapter 418, Laws of 1897, were repealed by the Legislature in the Consolidated Laws, February 17, 1909 (vol. 4, p. 2860). The order of Heim, plaintiffs' predecessor in interest, for the machine was dated November 22, 1909. With the repeal of the said sections there is nothing in the Personal Prop-erty Law as it existed on November 22, 1909 (Consol. Laws, c. 41, art. 4, relating to contracts for the conditional sale of goods and chattels), to exclude articles to be manufactured. Section 62 of the Personal Property Law refers to a contract for the conditional sale

of goods and chattels, "accompanied by delivery of the thing con-
tracted to be sold." In the case at bar the contract does not order
the construction of the machine; it simply orders that the machine
be shipped, and, as delivery of the machine followed the order, the
transaction is within the statute.

Motion for a new trial is granted.

Motion granted.