BREAKSTONE et al. v. BUFFALO FOUNDRY & MACHINE CO. (No. 6917.)

(Supreme Court, Appellate Division, First Department. March 26, 1915.)

1. SALES ☞481—REMEDIES OF BUYER—ACTIONS—EVIDENCE.

A machine was sold by defendant, reserving title until payment of the purchase money. The assignee of the contract, after paying about half the purchase price, became bankrupt, and the machine, with other property, was sold to plaintiff. Thereafter defendant took possession of the machine, but did not sell it within 30 days; and plaintiff sought to recover the amount paid thereon, in accordance with Personal Property Law (Consol. Laws, c. 41) § 65. *Held*, that a stipulation prepared by defendant's counsel, and letters exchanged between counsel for plaintiff and defendant, showing that plaintiff agreed to the plan of the trustee in bankruptcy, that defendant should take back the machine in satisfaction of its entire claim, was improperly excluded, being admissible on the question of waiver, release, or estoppel.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1449–1455; Dec. Dig. ☞481.]

2. SALES ☞473—CONDITIONAL SALES—REMEDIES OF PURCHASER—STATUTE.

Personal Property Law, art. 4, §§ 60–67, relating to conditional sales, applies to conditional sales of property to be manufactured.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1377–1390; Dec. Dig. ☞473.]

3. SALES ☞481—CONDITIONAL SALES—REMEDY OF BUYER.

Where the seller of a cumbersome machine retook it under provision reserving title until payment, the 30-day period within which the seller is required by Personal Property Law, § 65, to resell, under penalty of paying the buyer the amount paid on the article, will be computed from the time the dismantled machine was placed on railroad cars, though the breaking down of a car necessitated considerable delay in transportation to the seller's place of business.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1449–1455; Dec. Dig. ☞481.]

4. SALES ☞475—CONDITIONAL SALES—ASSIGNMENT OF CONTRACT.

A buyer of an article, to be paid for in installments, may assign the contract, though he cannot free himself from liability; but the assignee may also become liable.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1403–1406; Dec. Dig. ☞475.]

5. BANKRUPTCY ☞140—TRUSTEE—RIGHTS OF.

Where the assignee of a contract for the purchase of an article on installments became bankrupt, the trustee succeeded to all the rights of the assignee, subject to the seller's right to retake the article for nonpayment.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 225; Dec. Dig. ☞140.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. SALES ⬅⮕479—REMEDIES OF SELLER.

Where a machine was sold on an installment contract, the seller reserving title until payment, he may, upon the bankruptcy of the buyer, either retake the machine or file a claim in bankruptcy for the amount unpaid.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1418–1432, 1434–1438; Dec. Dig. ⬅⮕479.]

7. SALES ⬅⮕479—ACTIONS—REMEDY OF BUYER.

Whether the buyer of the property of a bankrupt waived his right to demand that the seller of an article should, having retaken it, sell it within the 30 days provided by Personal Property Law, § 65, *held* a question for the jury.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1418–1432, 1434–1438; Dec. Dig. ⬅⮕479.]

8. SALES ⬅⮕481—REMEDIES OF BUYER—WAIVER OF RIGHTS.

In case of a conditional sale, the buyer, having defaulted, may agree with the seller to waive his right to require the seller to resell, in accordance with Personal Property Law, § 65, in consideration of the seller's releasing him from further liability.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1449–1455; Dec. Dig. ⬅⮕481.]

Appeal from Trial Term, New York County.

Action by Isaac Breakstone and another against the Buffalo Foundry & Machine Company. From a directed verdict for plaintiffs, and an order denying a new trial, defendant appeals. Reversed and remanded.

Argued before CLARKE, LAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

Frederick C. Slee, of Buffalo, for appellant.

Abraham Brekstone, of New York City, for respondents.

LAUGHLIN, J. This action was brought to recover the amount paid on the purchase price of a vacuum rotary drum dryer, under a contract with the defendant for the sale thereof, by which the title was to remain in the defendant until payment of the full purchase price; and the right of recovery is predicated on the retaking of the property by the vendor and its failure to sell the same within the time prescribed by section 65 of the Personal Property Law. The defendant manufactured vacuum rotary drum dryers used in drying milk into powder or milk flour for commercial purposes, and its plant was at Buffalo, N. Y. The contract for the sale of the dryer was in writing, and consists of a proposal, made by the appellant under date of November 16, 1909, to Richard Heim of Canastota, N. Y., and of an acceptance by him thereof on the 22d day of the same month. The dryer was to be and was manufactured according to specifications annexed to the contract, and was a very bulky and heavy machine, requiring three freight cars for its transportation. It was sold for $12,000, f. o. b. cars at Buffalo, but was to be and was installed by the vendor at Heim's creamery at Truxton, N. Y., the vendee also paying for the services of the erecting engineer. The terms of sale were $1,500 at the time of the execution of the contract, $1,500 within two months thereafter, $2,000 when the machine was ready for shipment, and the balance to be evidenced by notes,

given prior to the shipment of the machine, of $750 each, bearing interest at 6 per cent. maturing in 60, 90, 120, and 150 days, and eight notes, for $500 each, maturing 6, 7, 8, 9, 10, 11, 12, and 13 months from date. The vendee made the first payment, and on the 3d day of December, 1909, assigned the contract to the Heim Milk Products Company, a domestic corporation evidently incorporated to take over his business, which assumed all his liability thereunder. The Heim Milk Products Company was adjudicated a bankrupt on the 29th of February, 1911. Prior to that time there had been paid on the contract price of the dryer $6,-496.25, and nothing was paid thereafter. A trustee in bankruptcy was appointed on the 16th of March, 1911; and he also came into the possession of another dryer, sold by the appellant and installed in the plant of the bankrupt at Canastota under a conditional contract of sale, upon which there was still a small balance unpaid.

On the day the trustee was appointed, his attorney and the attorney for the appellant had a conversation with respect to these two machines, the contracts under which they were sold, and the balance unpaid thereon. According to the testimony of the attorney for the trustee, the attorney for the appellant stated that no payment had been made for several months on account of the machine at Truxton, and that the appellant was desirous of taking possession and realizing on it, and he stated that he hoped to sell both plants, and that he thought they could be sold to better advantage together, and requested a reasonable time to enable him to endeavor to do so, and asked whether the appellant would insist upon its lien against the machine at Canastota, and the attorney for the appellant thereupon stated that his client would release the lien on the Canastota machine, and give him a reasonable time in which to endeavor to find a purchaser for the Truxton machine, "if the trustee was willing, at the expiration of such time, when we were satisfied that we could not find a purchaser, so that we could realize anything upon the equity, to release the machine to him without further trouble or expense," and that he talked the matter over with the trustee, who thought it was "the proper arrangement to make," and that he informed the attorney for the appellant "that that would be satisfactory." Appellant, evidently relying on that agreement, refrained from exercising its legal right to retake the machine at once, and gave the trustee all the time required to endeavor to sell the machine. It appears that thereafter, and on the 11th day of April, 1911, on the petition of the trustee, the attorney for the appellant appearing and interposing no objection, the referee in bankruptcy made an order authorizing the sale of the Truxton plant and of this machine separately.

The attorney for the trustee further testified that, after the arrangement with the attorney for the appellant, he endeavored to sell the machine, but was unable to find a purchaser, but secured a bid for the Truxton plant without the machine from the plaintiffs; that he endeavored to sell the machine to the plaintiffs, who had one mortgage on the Canastota plant and another on both plants, and they refused to entertain any proposition with respect to purchasing it, and one of them assigned as a reason "that he had no confidence in the milk flour proposition, and did not want the machine at any price"; that he presented plaintiffs' offer to the referee in bankruptcy in the presence of a

brother of the plaintiffs, who, it appears, was duly authorized to represent them generally in the premises; that the referee thereupon stated that, before transferring the plant, the milk flour machine should be released "by order" to the appellant, reminding him that it had been agreed that the machine would be released to appellant on or before the 22d of May, 1911. It further appears by the testimony of the attorney for the trustee, in effect, that he had abandoned hope of selling the machine and had agreed to release it to appellant on the day stated by the referee; and in reply to the statement of the referee he said that the question of "release" had not been passed upon at a creditors' meeting, and that, while "we were satisfied that there was no equity in that machine for the creditors, it had cost the bankrupt a large amount of money, and that I questioned the legality of an order, entered without notice to the creditors, releasing that machine to the vendor," and suggested, if Brekstone, who represented the plaintiffs, did not object, "that we include the interest of the bankrupt estate in the bill of sale and transfer to Breakstone Bros. [plaintiffs], and in that way divest the trustee in bankruptcy of any further interest in the machine"; that said Breakstone thereupon said "that they did not want the machine, did not want any responsibility in connection with it; that they would like to have it taken out of the plant right away, for they would need the room"; and he answered Breakstone's objection by saying that it would take less time for the vendor to get the machine out in the manner he proposed than it would to call a creditors' meeting to authorize the trustee to release it direct to the appellant; that this conversation occurred on the 11th, 12th, or 13th of May, 1911; that acting on the conversation between him and the referee and the representative of the plaintiffs at that interview, on the Saturday thereafter he prepared the petition of the trustee to the referee, showing that he had received an offer from the plaintiffs of $13,261 for the plant, free and clear of liens and incumbrances, payment to be made $1 in cash, $2,000 by the purchasers assuming and agreeing to pay a mortgage on the premises held by one Levy, $2,300 by their giving to the trustee a satisfaction of a mortgage held by them on the Canastota plant, and the remaining $8,960 by the purchasers giving to the trustee a satisfaction of a mortgage held by them on both plants, and reciting "that for the consideration aforesaid your petitioner is also to transfer to said Breakstone Bros. all his right, title, and interest as trustee of the said bankrupt * * * in and to a certain milk flour machine, now in the plant at Truxton, N. Y.," manufactured by the appellant, upon which it had a lien for about $6,000, under a conditional contract of sale, and prepared the order approving the sale, and the bill of sale and deed, in accordance with the petition; that on the 13th or 15th of May, the said agent and the attorney for the plaintiffs met him at the office of the referee in bankruptcy, and the petition was presented to the referee, and the order was made and the bill of sale and deed delivered to the attorney; that he then submitted to the agent and the attorney for the plaintiffs a list of the policies of insurance on the property held by the trustee, and asked if they wished to take them over and pay the trustee the pro rata unearned premiums, and they agreed to take them all, with the exception of the policies on this machine, and one of them said they would

not take those policies, and that they wanted "that machine taken out just as quickly as it can be"; that he then asked them what time he would tell Mr. Slee, the attorney for the appellant "that you would like this machine removed," and one of them said, "We want it out right away," whereupon he said, "Well, of course, you can't have it out before Thursday, for the reason that the trustee is not giving you possession of the property until Thursday"; that the trustee was running the plant, and for that reason was not giving possession until Thursday, and he further said to the agent and the attorney for the plaintiffs, "I will notify Mr. Slee, then, that you want the machine out right away, and that they can take it out any time after Thursday of this week"; and that, as that was apparently acquiesced in, he so notified Mr. Slee.

[1] Levy's mortgage, which the plaintiffs assumed, was in process of foreclosure at the time, and the appellant was a party defendant. Levy had agreed to discontinue the action to enable the trustee to sell the plant. On the 22d of May, 1911, the attorney for the plaintiffs wrote the attorney for the appellant, inclosing a stipulation of discontinuance of the action. A letter from the attorney for the appellant in reply thereto, and a proposed stipulation as a substitute for the one inclosed to him, and a letter from the attorney for the plaintiffs in reply thereto, were offered in evidence by the appellant and excluded; but they were marked for identification and are in the record. This ruling, we think, was error, for the evidence thus excluded bore on the defense of waiver, release, or estoppel. It was recited in the proposed stipulation that the appellant "need not hold said machine after retaking and advertise the same for sale, or sell the same at auction, as provided by statute, the provisions of said statute and all of them being expressly waived by the parties hereto, the intent hereof being to give the entire property in said machine to the defendant, Buffalo Foundry & Machine Company, without further accountability on its part to any of the parties hereto"; and it was stated in the letter from the attorney for the plaintiffs in reply thereto, among other things, "I cannot see how the inclosed stipulation could in any way change the status of your rights; * * * I personally would have no hesitancy in signing the stipulation you sent me," but that all other parties had signed the stipulation which he had sent to the attorney for the appellant, and some of them had refused to sign the stipulation which the latter had sent to him.

The court also erroneously excluded another letter written by the attorney for the plaintiffs to the attorney for the appellant under date of May 27, 1911, referring to the stipulation which the latter desired, and stating, among other things, that the plaintiffs "have no objections whatsoever against your taking possession of the machine in question," but that he could not get the consent of the other parties to the action to sign the stipulation requested by the attorney for the appellant. These letters and other evidence to show the rental value of the machine during the time it was used under the conditional contract of sale and its actual value when retaken were offered on the defense of waiver or estoppel, and they were excluded by the learned trial court on the erroneous theory, frequently expressed during the trial, as shown by the record, that waiver was no defense in an action such as this. The appellant showed that its sales manager called on Isaac Breakstone,

one of the plaintiffs, in New York City, on the 25th of the same month, and demanded this machine, and was informed that the plaintiffs did not want the machine and had no interest in it, but, rather than have the building disturbed, they would pay the appellant $500 to leave it there, and on the 8th of June thereafter it sent one Lavett, a machinist in its employ, with a letter of introduction to the plaintiffs, to dismantle the machine for the purpose of removing it, and that he commenced the work on that day. It further appears that the plaintiffs wrote a letter to the law firm of the attorney for the trustee, under date of June 10, 1911, in answer to a letter which was not introduced in evidence, stating that, "in order not to be interrupted at this time of the year in breaking up the creamery," they had decided to make appellant "an offer of $1,000, and we should get full title to the plant," and authorizing the communication of the offer to appellant, and stating, further, "We do not think those people can realize more money by wrecking and breaking up that machine;" and the firm replied on June 12, 1911, that they had conferred by telephone with the attorney for the appellant, who said that appellant did not care to accept the offer, as it had already made arrangements to remove the machine and intended to sell it as a *glue dryer,* which was a clear indication that appellant did not understand that in retaking the machine pursuant to the arrangement therefor it was to be obliged to sell it under the statute.

There were no further negotiations between the parties, and the appellant continued to dismantle the machine and to load it onto cars on a siding adjacent to the creamery, used by the plaintiffs for the receipt and delivery of freight to and from the creamery, but owned by the Lehigh Valley Railroad Company. The cars were requisitioned by appellant's machinist from the railroad company, for shipment to Buffalo. The first car left the plant on June 17th, and arrived in Buffalo on the 26th. The second car left the plant on June 28th and arrived in Buffalo on July 3d. The third car was loaded on the siding on the 29th of June, but it broke down, and the railroad company refused to move it. The freight was thereafter transferred from that car by the agents of the appellant, in the exercise of due diligence, to another car, on the 9th of July, 1911, and on the 11th of July, the railroad company issued a bill of lading therefor and shipped it on that day, and it arrived in Buffalo on the 15th of July. The freight was evidently unloaded and taken to the plant of the appellant, where it was sold at public auction on the 5th day of September, 1911, pursuant to a notice in writing duly mailed to one of the plaintiffs at his address on the 18th of August, 1911, and to another notice to both plaintiffs at their address on the 2d of September, 1911, which was *the day after this action was brought,* and on the sale the appellant bid in the property for $1.

At the close of the evidence, the attorney for the appellant moved for a direction of a verdict, reserving his right to go to the jury, if the motion should be denied, on the ground that the plaintiffs had waived their rights or were estopped from asserting the claim on which this action was brought. The motion was denied, and his requests to go to the jury were denied, and he excepted; and on motion of counsel

for the plaintiffs the court directed a verdict for $6,496.25, the amount paid on the machine.

[2] We do not agree with the learned counsel for the appellant that article 4 of the Personal Property Law (chapter 41, Consolidated Laws; Laws of 1909, c. 45), relating to contracts for the conditional sale of goods and chattels, does not apply to property sold under a conditional contract of sale where at the time the contract is made the property is not in esse, but is to be manufactured. That was the construction placed upon the former statute on this subject, which was article 9 of the Lien Law, being chapter 418, Laws of 1897 (Consol. Laws, c. 33). Duntz v. Granger Brewing Co., 41 Misc. Rep. 177, 83 N. Y. Supp. 957, affirmed 96 App. Div. 631, 89 N. Y. Supp. 1103, affirmed 184 N. Y. 595, 77 N. E. 1186; Washington Trust Co. v. Morse Iron Works & D. D. Co., 106 App. Div. 195, 94 N. Y. Supp. 495, modified 187 N. Y. 307, 79 N. E. 1022. See, also, Graves Elevator Co. v. Callanan, 11 App. Div. 301, 42 N. Y. Supp. 930. But we think the effect of the amendment thereto by chapter 698 of the Laws of 1904 was to bring such property within the provisions of the statute, and it has been so held. Crocker-Wheeler Co. v. Genesee Recreation Co., 140 App. Div. 726, 125 N. Y. Supp. 721; McLean v. Bloch, 52 Misc. Rep. 545, 102 N. Y. Supp. 838.

[3] Nor do we agree with counsel for the appellant that the sale was made within the 30 days succeeding the first 30 days after the appellant retook the property, as required by section 65 of the Personal Property Law. It was not essential, to set the provisions of the statute running, that the vendor should retake the property by actually taking physical possession thereof. It was held in Crowe v. Liquid Carbonic Co., 208 N. Y. 396, 102 N. E. 573, that the leasing of the property to the vendee's successor in possession of the premises was sufficient to constitute a retaking, and to set the statutory period running. In the case at bar, the property must all be deemed to have been in the possession of the appellant, at least when the last of it was loaded on the third car, which broke down; for on the stipulation it cannot be said that the car was in the possession of the plaintiffs. Therefore it was not sold within the 30 days succeeding the first 30 days after the appellant took possession.

[4-8] Counsel for the appellant also contends that the contract was not assignable by the vendee to the bankrupt, or by the trustee of the bankrupt. We think it was, and, while the vendee could not release himself from liability, it was competent for him to assign the contract to the corporation, and for it to assume his liability, and thus also become liable to the vendor. The trustee in bankruptcy succeeded to the rights of the bankrupt under the contract, which rights were subject to the *absolute* right of the appellant to retake the property on account of the defaults in paying installments due, without any negotiations either with the assignee or the trustee in bankruptcy, and to hold the same subject to redemption, and, if not redeemed, to sell it pursuant to the statute, or, without retaking the property, to file a claim in the bankruptcy proceedings for the amount unpaid. Although there appears to have been no express reference in the negotiations to filing such a claim for this machine, it is manifest that the negotia-

tions between the attorney for the appellant and the attorney for the trustee in bankruptcy, by which it was agreed that the trustee should release this machine to the appellant, were had upon the theory that the estate would thereby be released from any claim on the part of the appellant with respect to either machine; and if the effect of the negotiations was not as matter of law a waiver, or estoppel on the part of the trustee in bankruptcy from asserting any claim against the appellant for its failure to sell the property pursuant to the provisions of the statute, a question of fact for the consideration of the jury, at least, was presented thereby.

Notwithstanding the formal petition for the sale and the order approving it, it appears by the uncontroverted testimony of the attorney for the trustee that an arrangement for the release of the property to the appellant had been negotiated before the final order approving the sale, and there was evidence upon which it might have been found by the jury, if it was not uncontroverted as matter of law, that the plaintiffs consented and agreed to carry out this arrangement as a condition of having the machine included in the formal order approving the sale, and in the bill of sale to them, and that they did this for the purpose of avoiding the delay incident to calling a meeting of the creditors and having them formally authorize the trustee to release the property in accordance with his agreement with the attorney for the appellant. If the plaintiffs were not as matter of law estopped from asserting any interest in the machine or rights under the contract, which was not assigned to them, the jury might have found on the evidence, under proper instructions, that they were estopped, and that the appellant was led and induced by their conduct to retake the property, instead of asserting its claim against the trustee in bankruptcy, or against them, on the theory that they succeeded to the liability on the contract if they succeeded to any rights thereunder.

In construing this evidence it is to be borne in mind that there was no sale or assignment of the contract to the plaintiffs. If they succeeded to anything more than the right to the trustee's possession of the property, subject to the rights of the appellant, it must be upon the theory that the transfer to them of the right of the trustee in and to the machine transferred to them also his equity, and they had notice that he had agreed to release that. If they had not taken the property on the understanding that the transfer to them was merely formal, for the purpose of delivery to the appellant, they would doubtless have had the right to acquire title thereto by paying the balance of the contract price; but, on the evidence in this case, I think it is clear that the plaintiffs did not become liable to the appellant for the balance of the contract price, for they did not assume the contract, or the obligations of the vendee thereunder; and it was, according to the evidence adduced in behalf of the appellant, expressly understood that they did not want the machine and had no interest therein. We do not deem it necessary to decide whether plaintiffs, if they had *in fact,* and in good faith, without notice of the agreement between the trustee and the appellant, purchased for value the interest of the trustee in the machine, would thereby, without an assignment of the contract, have been his successor in interest under the statute and

have become entitled to recover the payments made, if a sale were not made as required by the statute; for that is not the position they occupy. Although it has been held that an express waiver in the contract of sale is void, as against the public policy of the state, manifested by the statute (Crowe v. Liquid Carbonic Co., supra), it has also been held by this court, and by the Appellate Division in the Third Department, that the vendee may, by an arrangement with the vendor at the time he is in default, by which the latter is induced to retake the property, waive, or become estopped from asserting, any rights he might otherwise have had under the statute, if the vendor had reclaimed the property *as a matter of right* by virtue of the conditional terms of the contract of sale. Fairbanks v. Nichols, 135 App. Div. 298, 119 N. Y. Supp. 752; Seeley v. Prentise Tool & Supply Co., 158 App. Div. 853, 144 N. Y. Supp. 48.

The judgment and order should therefore be reversed, and a new trial granted, with costs to appellant to abide the event.

CLARKE and DOWLING, JJ., concur.

SCOTT, J. ·I concur in the reversal of the judgment upon the grounds: First, that it was error not to have submitted to the jury the question whether or not plaintiffs had not waived any rights they may have had to the property, or had estopped themselves from asserting any rights in reference thereto; and second, that, assuming that the contract between the original vendee and defendant was assignable, and might have passed under the sale by the trustee in bankruptcy, it was not assigned thereby, because the plaintiffs never accepted it or assumed the vendee's obligation under it.

HOTCHKISS, J., concurs.