HOWARD C. FISHER, Plaintiff, *v.* STEWART MOTOR CORPORATION, Defendant.

City Court of Buffalo, April 27, 1928.

Sales — conditional sale — defendant sold motor truck to plaintiff under conditional sale contract — defendant retook truck on default in payment — resale at public auction was not made within thirty days after retaking, as required by Pers. Prop. Law, § 79 — plaintiff is entitled to recover actual damages, under Pers. Prop. Law, § 80-e — no defense that plaintiff waived resale within thirty days — plaintiff could not waive operation of statute either before or after retaking (Pers. Prop. Law, § 80-f) — defendant's proof that plaintiff asked it to hold truck did not constitute new contract — plaintiff is entitled to recover value of automobile at time of seizure which was fixed at $1,550, less amount still due.

Plaintiff purchased an automobile truck from the defendant on a conditional sales contract at the price of $2,275.12 and paid thereon in installments $1,409.15. He defaulted in making the September and October payments and on November

15

25, 1926, the defendant retook the truck. It was not sold at public auction, as required by section 79 of the Personal Property Law, until March 2, 1927. This action is brought under section 80-e of the Personal Property Law to recover plaintiff's actual damages arising out of the failure of the defendant to comply with the statute. The plaintiff may recover.

It is not a defense to an action brought under the statute that the plaintiff waived the right to have a sale within thirty days after retaking, for the rule is that a conditional sale vendee cannot waive the operation of the statute, either before the taking or thereafter. (Pers. Prop. Law, § 80-f.)

The contention of the defendant that a new contract was entered into after the truck was retaken, is not supported by the evidence. The defendant's own evidence shows merely that the plaintiff requested the defendant to hold the truck but that there was no consideration for that contract and no agreement binding on the parties to do so. Furthermore, the evidence by the plaintiff is such as to lead to the conclusion that no contract was entered into and that the plaintiff did not even request the defendant to hold the truck prior to the expiration of the thirty-day period.

The truck had been used by the plaintiff for nine months and the testimony shows that the life of the truck was approximately three years. It had been run about 20,000 miles while the total mileage was estimated from 150,000 to 200,000 miles. Taking into view the testimony by the plaintiff's witnesses to the effect that the truck when retaken was worth $1,550, and also the usage given the truck, the value thereof at the time of retaking is fixed at $1,550 and the plaintiff is entitled to recover that amount less the amount due to the defendant under the contract.

ACTION, brought by the buyer of a truck which was purchased under a conditional sale agreement, to recover damages pursuant to section 80-e of the Personal Property Law, on the ground that, after the retaking, the seller failed to abide by the provisions of said law, which are required in order to invest title absolutely in the seller.

*Block & Williams* [*Adrian Block* of counsel], for the plaintiff.

*Timerman & Timerman* [*Newell H. Timerman* of counsel], for the defendant.

HARTZELL, J. It is alleged in the complaint, and admitted by the answer, that on February 25, 1926, at Buffalo, the plaintiff purchased of the defendant a new automobile truck for $2,275.12, of which $790.52 was paid down, and the rest was to be paid in monthly installments of $123.79 on the twenty-fifth day of each month succeeding the date of purchase, until the balance of the purchase price was paid. The plaintiff paid in all $1,409.15, defaulting in the September and October installments, and on November 25, 1926, the defendant repossessed the truck. It further appears that on March 2, 1927, defendant sold this truck at public auction, and that no part of the moneys paid by plaintiff were returned to him either before or after the said sale.

Plaintiff's claim is that defendant failed to sell this truck within thirty days after the retaking as is required by section 79 of the Personal Property Law (as added by Laws of 1922, chap. 642) and that consequently, under section 80-e of the Personal Property Law (as added by Laws of 1922, chap. 642), plaintiff is entitled to his actual damages, and, in no event, less than one-quarter of the sum of all payments which he has made under the contract with interest. He claims his actual damages are the value of the truck at the time it was taken from him, since the unlawful sale by the defendant amounted to a conversion or wrongful disposal of the truck, less the amount which plaintiff owed defendant on the truck, but, in any event, if the court should find that the difference between the said value and the amount owed by plaintiff is less than one-quarter of $1,409.15, with interest, that the plaintiff is entitled to the latter amount as damages in this action.

Defendant concedes that it did not sell the truck within thirty days from the date of its retaking, but alleges that it was excused from so doing by an arrangement with the plaintiff, whereby the time within which the sale of the truck was by law required to be sold, was, at the request and with the consent of the plaintiff, extended beyond such date, from time to time, and up to and including the date of March 2, 1927, the date upon which said truck was sold.

The case has been presented to the court clearly and ably by the respective counsel at the trial herein, and the court has also been materially assisted by the full discussion of the legal problems involved that has been offered in the able briefs filed with the court, and which have received my very careful consideration.

Section 79 of the Personal Property Law provides that, if the buyer does not redeem the goods within ten days after the seller has retaken possession, and the buyer has paid at least fifty per centum of the purchase price at the time of the retaking, the seller shall sell them at public auction in the State where they were at the time of the retaking, such sale to be held not more than thirty days after the retaking.

There is no dispute about the fact that on November 25, 1926, the plaintiff had made a default, as aforesaid, and that on said date there was a balance of the purchase price due and owing said defendant from the plaintiff of about $800, and that on said date the defendant, by virtue of its contract repossessed itself of said truck. Neither is there any dispute about the fact that the said truck was not sold at public auction until March 2, 1927.

It is the contention of the learned counsel for the defendant herein that the arrangement which he claims was ma~~ with plaintiff in reference to the extension of time excused its ~~~~~~~ the

statute in reference to making the sale of the truck within thirty days after its retaking. This claim is based upon the ground that said arrangement constituted a new contract between the parties and supplanted the original contract embraced in the conditional contract of sale. On the other hand, the learned counsel for the plaintiff holds that the evidence establishes the fact to be that any arrangement made between the plaintiff and defendant after the retaking of the truck by the latter, if any were made, as outlined by defendant's evidence, does not constitute a new contract that would supplant or modify in any manner the original conditional contract of sale; that such arrangement, if made, must be considered merely as creating a waiver which is unauthorized by law, and to be ineffectual to relieve the defendant from the provisions of the nature of the statute, requiring the sale of the truck within the thirty day period after the date of retaking the same.

The controversy between the parties in this case presents an interesting question, which has received the careful consideration of the court. I think it may be stated that the law upon the proposition as to waiver in a case of this kind seems to be well settled in this State. The statute was designed to mitigate the possible harshness sometimes arising under such conditional sales contracts, and the courts have made various decisions in reference to the question of waiver of the provisions of the statute, which would tend to nullify its beneficial effects. The earlier rulings upon this question declared invalid any waiver contained in a conditional contract of sale itself, whereby the vendee consented in terms to any modification of the provisions of the statute, as laid down therein.

In the case of *Nordone* v. *Austin Drainage Excavator Co.* (184 App. Div. 309) the court holds that the law of the State condemns as against public policy any terms in the contract for the conditional sale of property that waives or thwarts the procedure provided by the statute relating to conditional sales. To the same effect is the case of *Crowe* v. *Liquid Carbonic Co.* (208 N. Y. 396) wherein the court held that an express waiver in the contract of conditional sale was ineffectual, because inconsistent with the public policy manifested by the legislative act. In that case the court says: " The legislative purpose was in the direction of promoting the public good, in mitigating the possible harshness of such a contract by preserving some right to a vendee, and, if originally, as part of the former Lien Law, perhaps, having more especial reference to waivers in contracts for the sale of household furniture and certain other articles of a household nature, the statute has been so changed by amendment as to read in its present unqualified form. However designed, in the general purpose, to afford some

equitable protection against the improvidence and misfortune of the poor, or necessitous, it is for the Legislature, not for the court, to restrict the general operation of the act."

The question of waiver in the contract itself having been declared invalid as against the law and policy of the State, as above mentioned in conditional contracts of sale, the question then arose from time to time, as to the effect of a waiver of the provisions of the statute made by the vendee, being in default and not expressed in the contract itself, but occurring by an arrangement between the parties to the contract, as to whether such waiver was also invalid. (*Adler* v. *Weis & Fisher Co.*, 218 N. Y. 295.) In the latter case the court holds there can be no waiver of the provisions of law protecting the conditional vendee, either by a waiver included in the conditional sales contract, or by waiver at the time or after default of any payment by the conditional vendee. The court in this respect said: " In the case under consideration the pleading when liberally construed may fairly be regarded as alleging a waiver on the part of the vendee, and the exclusion of the evidence of waiver which the defendant sought to introduce presents the question whether such a waiver if in fact made is sufficient to take the case out of the operation of the statute. In our opinion it is not. The same considerations of public policy which required us to hold that an express waiver in the contract was invalid impel us to the conclusion that a mere waiver made after default is equally offensive to the public policy manifested in the statute, and, therefore, not effective to take such a case out of the operation of the statute." (See, also, *Cee Bee Cee Waist & Costume Co.* v. *Borenstein,* 164 N. Y. Supp. 703; *Grossman* v. *Weiss,* 221 id. 269; *Hillelson* v. *Old Reliable Motor Truck Corp.,* 208 App. Div. 327.)

In construing the clause of the statute in former section 65 of the Personal Property Law, in reference to the sale of the article or goods within thirty days after the retaking by the vendor under a conditional contract of sale, said provision being the same as to this feature as the later section 79, it has been held that the primary purpose of that section seemed to be to assure to the vendee a redemption period of thirty days. (*Freeman* v. *Engel,* 185 App. Div. 218.) This section is not penal in its nature, its purpose being merely to protect the purchaser from being mulcted by the seller. (*Petze* v. *Waters & Co.,* 166 N. Y. Supp. 1000.)

The next development of the question of waiver under the statute arose as a logical sequence to the decisions establishing the invalidity of the same, both when incorporated in the original contract or by agreement of the parties outside of the written instrument. This development found expression in a ruling by the courts that where

a new contract arises and for a new consideration passing between the parties the provisions of. the statute no longer apply. (*Seeley v. Prentiss Tool & Supply Co.*, 158 App. Div. 853; *Boschen v. Multicolor Sales Co., Inc.*, 98 Misc. 637; *McDougall v. Shoemaker*, 236 N. Y. 127.)

The defendant bases its claim upon the creation of a new contract between the parties that excuses its failure to comply with the provisions of the statute to sell the property taken within thirty days thereafter. Let us briefly examine the evidence to see if such a new contract was established between the parties. The truck was retaken by defendant November 25, 1926. Mr. Suttner, assistant sales manager of the defendant corporation, testified that two weeks after the repossession of the truck the plaintiff called him up by telephone and inquired the amount due on the truck, and asked if defendant would hold the same, to which he replied in the affirmative. Several weeks later a further inquiry was received from the plaintiff as to the amount due, which information was likewise furnished by Mr. Suttner for the defendant. The witness further testified that a few days later the plaintiff called at defendant's office in person, and again wanted to know the amount due and asked defendant to hold the truck until Saturday at two o'clock, which day was February twelfth, to which request the defendant assented, and that plaintiff stated he would be in at that time to take the truck. It appears also from Suttner's testimony that, at the time of the last conversation with plaintiff, the witness informed plaintiff that defendant had made repairs upon the truck to the extent of ninety dollars, which sum defendant would like to have him pay if he was willing to do so.

A further witness for the defendant was Mr. Lentz, secretary and treasurer of defendant company, who testified that he heard the last-mentioned conversation at the defendant's office between plaintiff and Suttner; that this talk took place early in February, and the following Saturday referred to was the twelfth of the month. He testifies that plaintiff said he would be in Saturday at two o'clock and pay the amount due and to hold the truck for him.

The plaintiff, Fisher, denies the conversations on the telephone as related by Suttner, and in this connection testifies that he left Buffalo shortly after the seizure of the truck and went to Farmersville, N. Y., and returned to Buffalo the day before Christmas, and that he had no communication with defendant until about three weeks after Christmas, when he telephoned defendant's office and asked for a Mr. Mark, a salesman in defendant's employ, and learned he was out of town; that early in February he telephoned the defendant's office again, and asked what had become of the truck,

and was informed that the truck had been sold. This statement flatly refutes Suttner's testimony that two weeks after the truck was taken the plaintiff talked to him by telephone, which he testified he was sure was a local, and not a long distance call. Plaintiff testifies this was the only talk he had with the defendant by telephone or otherwise, aside from the information that the truck was sold, except a talk had with Mr. Suttner at his office, where he called early in February, 1927, about ten days later than the last-mentioned telephone call.

The plaintiff testifies that he asked about the truck and Mr. Suttner replied that they had been working on it, that they both went to the shop to look the truck over, and that Suttner then informed him that they had been obliged to repair the truck in order to sell it, and that a repair bill would have to be paid, amounting to $170. He further testifies that he then left defendant's premises, and at no time in this conversation, or previously, did he ask defendant to hold the truck, nor did defendant agree to do so; that later, after the date that the truck was sold, the plaintiff called personally at defendant's place of business, and that Suttner told him, if he could raise $200 in cash, that he could have the truck back and pay the balance in monthly payments, and that he (Suttner) would be at the office until two o'clock; that plaintiff replied that he might try to raise the money. He then left the premises, and no further communication passed between the parties.

The defendant claims that the conversations between the parties as testified to by its witnesses, above related, establish a new contract between the parties that removes the case from the operation of the statute. The plaintiff denies the facts of such conversations as claimed by defendant, and contends that the statute and all its provisions still apply, and that the plaintiff's right to recover in this action is definitely fixed by reason of defendant's failure to sell the truck within thirty days of its retaking.

A question of fact is presented to the court for its decision upon the conflicting testimony as to the respective claims, as to the conversations between the parties hereto. As I weigh the testimony, and the law applicable to the situation, I do not feel that a finding as to the disputed facts is necessary to a decision of this case.

There can be no question but what a new contract between the vendor and vendee, after default, and for a consideration passing between the parties, will remove a case from the operation of the statute. But the important question here is: Do the facts, even as claimed by the defendant, constitute a new contract in the eyes of the law? I do not see how a new contract for a valid consideration

can be spelled out of the facts presented by defendant's evidence, as required by law, to remove the case from the operation of the statute. There is nothing revealed from which a new contract can be formed; there is no consideration passing between the parties. At best, the most favorable light that defendant can claim for it is that it shows merely a request by plaintiff to hold the truck, and that if defendant would do so that plaintiff would pay for it. This does not meet the requirements of a new and valid contract that would remove the case from the operation of the statute. The defendant's consent to this proposition does not help the situation any. The plaintiff had defaulted, the defendant had repossessed itself of the truck, and more than thirty days had elapsed before the sale of the truck, with the possible exception of the first telephone conversation testified to by Mr. Suttner. But in respect to such first telephone talk, his testimony is indefinite, vague, and apparently of no importance, so far as creating any new contract that can be considered such, as a matter of law.

I am of the opinion that, at best, the alleged conversations with plaintiff, as claimed by defendant, point to that of a waiver, and not a contract. There was a request for forbearance and an assent thereto. There were no new matters arranged between the parties in reference to the truck and no new consideration passed. It must be conceded that there is nothing in all the testimony that would show that plaintiff made any agreement or arrangement for an extension of time within which defendant was compelled to sell the truck under the statute. He did not waive his right to have the truck sold within the thirty-day period. But, if there could be any extension of time spelled out of the evidence herein, it would be ineffectual under the authorities cited herein as being a waiver forbidden by law. If plaintiff's version of this matter is to be accepted, the thirty-day period had passed, and his right then became fixed before he had any conversation with the defendant.

But, giving the defendant all the benefit of its claim in this respect to the happening of this alleged telephone conversation, it is of no moment, and has no bearing, as I see it, upon the situation here presented. All that the witness claims as to this first conversation (being the only one before the expiration of the thirty days) is that he informed plaintiff of the amount due, and that he would hold the truck. How can a new and lawful contract be spelled out from these two facts — that he told plaintiff the amount due and that he would hold the truck? No definite time was given; it might be for an hour or a day. He does not state that plaintiff agreed to take back the truck or pay any sum for it whatever.

There is nothing in Mr. Suttner's testimony in this respect from

which the conclusion can be drawn that plaintiff either expressly or impliedly requested or authorized defendant to retain the truck beyond the thirty-day period allowed by statute. It also appears, as above related, that after the thirty-day period had elapsed in the month of February, 1927, an opportunity was afforded plaintiff to take back the truck, which he did not accept. Long before that time the vendee's rights had become fixed. It must be borne in mind, in this connection, that when defendant did make its belated sale of the truck it sold the same *in pursuance of the original conditional sales contract, and not under any new or subsequent contract.*

The main question, therefore, before the court is whether the transactions occurring between the parties, after the default of plaintiff and the retaking of the truck by the defendant, constitute a new contract that would remove the case from the operation of the statute. Upon the decision of this question rests the rights of the parties to this action. The learned counsel for the defendant earnestly urges that the facts and circumstances of the situation, as developed by the evidence herein, reveal the fact to be that a new contract was formulated thereby between the parties that excuses the defendant's strict compliance with the statute, and that in consequence thereof the plaintiff has surrendered or waived all rights belonging to him by virtue of the statute under the original contract of sale. I am conscious of the fact that the evidence as to what transpired subsequent to the default and the retaking is subject to more than a single interpretation.

My inferences drawn therefrom are not in harmony with those of the learned counsel for the defendant, and I have reached my conclusion after giving his able and earnest reasoning the careful consideration that it merits; and at this point in the consideration of the case, while, as outlined above, I have concluded, based upon the defendant's evidence alone, that no new contract has been established between the parties that would excuse the defendant's failure to sell the truck within the time stipulated by the statute, I also, in deciding the issue of fact presented by the conflicting evidence in the case, reach the same results. I find the plaintiff's version of what transpired between the parties hereto to be the correct account of what occurred as related by him, and I may say that I reach such conclusion without any necessary disparagement of the witnesses for the defendant. The latter are members of a large and important corporation of well-known and extensive business operations. They are constantly meeting and talking with customers, and prospective customers, both by telephone and otherwise, and I feel, therefore, that in all probability their recollection of what transpired in relation to this single truck from among the

numerous affairs that have occupied their attention, at this late date, is not as clear and distinct as that of the plaintiff. He is a man who had bought this single truck. He was a truck driver by occupation, living in the country, engaged in making a living with his truck in hauling goods from one destination to another. The ownership of the truck and its operation was, to him, a matter of supreme importance. Upon it depended his livelihood and that of his family. Its loss deprived him of his means of sustenance. He was a poor man, possessed of no means or income.

I speak of this, not in any sympathetic spirit, for such is without the province of the court in its consideration of the case in its legal aspect, but because it has a bearing upon and is relevant, in the legal view, to the disputed question here involved as to whether he promised to pay the amount still due upon the truck after it had been retaken by the defendant. It, therefore, seems to me that this single transaction concerning this truck, as compared with the numerous affairs of the defendant, stands out more clearly in plaintiff's mind, and is impressed more strongly upon his recollection, than upon that of the witnesses for the defendant.

Leaving the consideration of the evidence relating to the questions of fact in the case, which I decide in favor of the plaintiff, and passing again to the legal question involved herein, I find that the numerous cases examined by the court cast an illuminating light upon the subject which, to my mind, makes clear the decision reached by the court, in the case at bar, which adopts the contention of the learned counsel for the plaintiff herein. In the case of *Adler* v. *Weis & Fisher Co.* (218 N. Y. 295), as has already been pointed out, the court held that, unless the articles retaken are sold within thirty days after the retaking, the vendee may recover of the vendor the amount paid under the conditional contract of sale, for the purpose of the statute would be frustrated, if a mere waiver of the provisions of the statute, not in the form of a contract, could serve to take such contract out of the protection of the statute.

In that case it appears that, after default by the vendee under a conditional contract of sale, he consented that the defendant (the seller) should retake the chattels, and waived the provisions of the statute, which required the vendor, upon retaking the chattels, to sell them within the time prescribed by the statute. In holding that the arrangement between the parties, after the retaking, constituted a waiver, and was, therefore, invalid, the court says: " It was not alleged in the answer or attempted to be proved upon the trial that the vendor and vendee entered into any new contract upon a new consideration. * * * The decisions construing the statute now under consideration have made it clear * * * that

a new agreement founded upon a new consideration made after a default under the contract is valid and enforceable. (*Seeley* v. *Prentiss Tool & Supply Co., supra.*) ''

The court holds that under the facts and circumstances of said case no new contract for a new consideration was established, and that the arrangement entered into after default was a mere waiver, and not a new agreement for a new consideration.

In the case of *Seeley* v. *Prentiss Tool & Supply Co.* (158 App. Div. 853, *supra*) the receiver of the Sidney Valve and Supply Company, the vendee under a conditional contract of sale, brought the action to recover the amount paid thereunder, alleged to have become due under the provisions of the statute. It appeared that the defendant sold to the vendee certain machinery of the agreed value of $2,256 under conditional sales contract, providing payment of $564 in cash, and three notes for equal amounts to thereafter become due at different periods. After default in the later payments, negotiations were entered into between the parties whereby it was agreed that, upon delivery by the vendee to the defendant of the machinery in question, the latter would accept the same in *full settlement* of the balance due, and that the defendant should return the notes and other obligations held on the contract *properly canceled.* Upon this understanding, the machinery was delivered to defendant and the notes held by it were canceled and delivered to the Sidney Company, the vendee therein. The machinery thus delivered was not sold within the time prescribed by the statute. The action by the receiver of the Sidney Company followed. The court denied the receiver the right of recovery, upon the ground that the arrangement between the parties constituted a new contract and for a new consideration. In this connection the court, in referring to the status of the parties, said that the defendant might take possession of the machinery under the terms of its sale, or it might elect to sue upon the notes, in either of which events the Sidney Company would have been protected, for it would have had the right secured by the statute in the one case, or it would have had the machinery, subject to the payment of the notes, in the other. The court then further says: '' With these mutual rights existing, the parties entered into a negotiation. *The defendant did not act under its contract and take the goods;* * * * it was mutually agreed * * * to * * * pack up the machinery and *close the thing up by restoring its notes;* and we are of the opinion that this was a legitimate transaction, and that it is not governed by the provisions of section 65 *et seq.* of the Personal Property Law.''

Again the distinguishing feature of that case from the case at bar appears to be clearly marked, and points out that the necessary

elements of a new and valid contract between the parties as existing therein are lacking in the instant case before the court. The main features of the difference between the *Seeley* case and the one at bar may be epitomized as follows: *First,* the defendant *did not act under its contract* and retake the goods as provided by the statute; *second,* the Sidney Company *voluntarily surrendered* the machinery and the defendant *accepted* the same; *third,* this surrender was made *in consideration of the cancellation of the notes* held by the defendant, representing the full balance of the purchase price.

The case of *McDougall* v. *Shoemaker* (236 N. Y. 127) was an action by vendee to recover moneys paid upon a conditional sale of an automobile, where by virtue of said agreement he had made a cash payment on the purchase price and delivered certain notes for the balance. At a later date the plaintiff, *not being in default,* surrendered the car to the defendant, saying that he did not want it, whereupon the defendant accepted the same, with the understanding that he would try and sell the same, and would apply the proceeds of the sale upon the balance due from plaintiff, and that the latter would be obliged to supply any difference remaining after said sale. Defendant did not thereafter endeavor to collect on the promissory notes on the due days. The court held that the parties, in entering into such agreement, were not acting under or in violation of section 65 of the Personal Property Law. In this connection the court said: " Defendant as conditional vendor did not in fact, neither could he legally assert any right under that statute, the plaintiff not then being in default. There was no retaking of the automobile by defendant but a voluntary surrender of the car by plaintiff because he did not want it, and acceptance of same by defendant under the agreement above stated. Whether or not defendant by the agreement entered into became the agent of plaintiff to make sale of the car, or the arrangement made between the parties operated as a new agreement whereby the defendant who was not obligated to accept the car, did nevertheless accept the same under the agreement made, is immaterial. The trial justice found as conclusion of law that a new agreement was entered into between the parties. (*Seeley* v. *Prentiss Tool & Supply Co.,* 158 App. Div. 853; affd., 216 N. Y. 687.) We reach the same conclusion and that the transaction between the parties is not governed by the provisions of the Personal Property Law."

The case of *Boschen* v. *Multicolor Sales Co., Inc. (supra)* presents a similar situation, and is removed from the operation of the statute, and likewise differs materially in fact and principle from the instant case before the court. In the *Boschen* case the plaintiff bought a press from defendant for $175 paid in cash and six notes in the

amount of $300. When the first $50 note fell due the plaintiff was not ready to pay it, and requested defendant to take back the machine, as, it appeared, after testing it in his shop, plaintiff decided he did not want it. This offer was accepted by defendant, the latter taking away the machine and returning to plaintiff the $300 notes. The plaintiff thereafter brought the action to recover the cash payment of $175 on the ground that the defendant had failed to comply with the requirement of the statute. The court denied plaintiff's motion, upon the ground that, the defendant having taken the press at the vendee's request and returned to the latter the notes given as part of the purchase price, the transaction constituted a new contract of resale, or a waiver for a new and valid consideration, and that such agreement is not barred by the Personal Property Law.

It will be noted that in each of these cases, cited and discussed by both counsel, the facts reveal that a new contract supported by a consideration was clearly established; that the facts therein occurring constituted a new and different transaction subsequent to the original contract, and supplanted it to the extent that it was no longer in existence and its conditions no longer prevailed. It is clearly apparent, as I view it, that such cases, removing the situation from the operation of the statute, in no way coincide with the instant case before the court. In fact, they point out and emphasize the fact to be that the case at bar is not included in the category of these cases which hold a new contract to be created, and thus removing them from the bar of the statute.

Another case supporting plaintiff's contention herein, is that of *Hillelson* v. *Old Reliable Motor Truck Corp.* (208 App. Div. 327), wherein it is held that the buyer of a truck under a conditional contract of sale, dated August 9, 1918, is entitled to recover the payments made by him under the contract, where it appears that the seller, after retaking the truck from a marshal, resold the same more than sixty days thereafter, in violation of the provisions of former sections 65 and 66 of the Personal Property Law, and that the evidence does not sustain the contention of the seller that the resale was pursuant to a new contract with the buyer, but conclusively establishes that the resale was under the original contract, and that the provisions of the Personal Property Law cannot be waived. In commenting upon the lack of evidence in the case necessary to form a new contract to remove it from the operation of the statute, the court says: " Accepting the defendant's version, apart from any evidence offered by the plaintiff, there is no evidence of any new contract founded upon a new consideration. Any finding that there was such a new contract, by a jury, would have to be

City Court of Buffalo, April, 1928.                    [Vol. 132

set aside on the ground that such finding was unsupported by the evidence.   *   *   *   The defendant concedes that the truck was retaken by it from the marshal by virtue of its title reserved under the contract of conditional sale,   *   *   *   but appellant claims that all this was done at the request of respondent and for his benefit.   At the time of such taking one of the notes given by the plaintiff on account of the purchase price was due and unpaid, and under the terms of the contract, this fact entitled the defendant to retake the truck."

The similarity of that case to the instant case before the court is apparent.   Both lack those elements of evidence in the transaction between the parties from which a new contract for a new consideration could be spelled out.

The case of *Cee Bee Cee Waist & Costume Co.* v. *Borenstein* (164 N. Y. Supp. 703, *supra*) was one where chattels conditionally sold were retaken from the buyer for non-payment, and were not sold at public auction within sixty days thereafter, as provided by former section 65 of the Personal Property Law.   In an action by the buyer to recover part of the purchase price paid, the court held it was necessary for the seller to justify his failure to sell the goods in accordance with the statute.   He attempted to do so by claiming a waiver at the time the machines were retaken.   The court held that there can be no waiver of the protection afforded the vendee by the statute, as to the requirement to sell the property within sixty days after the retaking, either by a waiver contained in the original contract, or by a waiver at the time or after default in any payments by the conditional vendee.

To the same effect is the case of *Grossman* v. *Weiss* (129 Misc. 234, 235), wherein the court said: " After such retaking it was incumbent upon him to follow strictly the provisions of sections 76 to 80-f (as added by Laws of 1922, chap. 642) of that statute. As the defendant had paid more than fifty per cent of the purchase price at the time of the retaking, it clearly devolved upon the plaintiff to comply with the provisions of compulsory resale required by section 79, which could not be waived either by agreement of the parties or by invoking the wrong remedy of law.   (*Nordone* v. *Austin Drainage Excavator Co.*, 184 App. Div. 309.) ."

The provisions of the statute, therefore, apply to the case at bar and the plaintiff becomes entitled to recover from the defendant his damages provided by statute on account of its failure to sell the truck within thirty days after the retaking of the property.

The case of *Fairbanks* v. *Nichols* (135 App. Div. 298), cited by defendant, decided in 1909, is one where a vendee " hired " the property, and that monthly payments were to be considered as

rent, but gave the vendee a right to a bill of sale when the rent paid amounted to a certain sum, with the right of vendor to take possession without legal proceedings in case of vendee's default, and the vendee having *voluntarily surrendered the property* upon the ground that it was not worth the amount then unpaid, the court held that plaintiff could not recover his payments due to vendor's failure to sell the property as required by statute, as the sums paid amounted to no more than the fair rental value of the property while used by the vendee. The instrument by its terms was one of hiring, and the amount of money called for by the contract was described as being rent for the use of the property, and that the property should be used in the city of New York " during the continuance of this lease." The evidence showed that the rental value of the property approximated the amount paid therefor by plaintiff. The court, in its discussion of the case and denying plaintiff's right to recover, says: " The plaintiff has only paid, approximately, the fair rental value for the use of the property, and we have his word for it that his equity in the property was of no value for it was not worth the amount which he had agreed to pay. The Legislature has not attempted to supervise the agreements between vendors and vendees with respect to the value or purchase price of property, but only with respect to *forfeitures of rights* on account of non-payment of installments where goods are sold on the installment plan. No public policy requires that the court on these facts should hold that it was not competent for the plaintiff to waive any rights that he might otherwise have under the statute   *   *   *   and he should be deemed estopped from now asserting that the defendants should have sold the property *as if they had retaken the same against his will.*"

To my mind that case is likewise to be distinguished from the case at bar, and does not conflict with it, but, on the other hand, as I interpret it, in harmony with other decisions herein cited, sustains the principle upon which the court's ruling in the instant case is founded.

Likewise to the same effect is the case of *Breakstone* v. *Buffalo Foundry & Machine Co.* (167 App. Div. 62, 63), also cited by defendant. Among the lengthy and rather complicated facts of that case, largely foreign to the facts of the case at bar, the court clearly lays down a principle of law which is not in conflict with the court's decision in the instant case. In the said *Breakstone* case the court held: " A vendee, under a contract of conditional sale, may, when he is in default, by an agreement with the vendor, by which the latter is *induced* to retake the property, waive or become estopped from asserting any rights he might otherwise have had under the

statute, *if the vendor had reclaimed* the property *as a matter of right*, by virtue of the terms of the contract."

That was an action by the assignee of the trustee of the bankrupt vendee to recover the amount paid on the purchase price of machinery under a contract of conditional sale, where the plaintiffs claimed that the vendor, on retaking the property, failed to sell the same within the time prescribed by former section 65 of the Personal Property Law. After the vendee had made the first payment, he assigned the contract to a corporation formed to take over his business, which was subsequently adjudicated a bankrupt, and thereafter nothing was paid under the contract. Upon the appointment of the trustee in bankruptcy, his attorney and the attorney for the defendant had a conversation to the effect that the defendant would release the lien on one of the machines purchased, and give the trustee a reasonable time in which to sell the other one, if the trustee would, at the expiration of such time, if he was unable to find a purchaser, release the machine to him. Thereafter, the trustee, being unable to effect a sale, was willing to transfer the first machine to the defendant, conceding that there was no equity therein for the creditors, and, in order to avoid calling a meeting of creditors, proposed to transfer the machine to the plaintiffs, who had made an offer to purchase one of the plants of the bankrupt. After this sale the defendant proceeded to dismantle the machine and load it upon cars, which it had requisitioned, for shipment to its factory, where it was subsequently advertised and sold. The plaintiffs held mortgages on the bankrupt's property, and there was no sale or assignment of the conditional contract of sale to them.

At the trial of the case a motion for direction of a verdict in favor of plaintiff was granted and defendant appealed. The court held, on all the evidence, that a judgment in favor of the plaintiff should be reversed, and a new trial granted; that it was a *question of fact* whether or not the trustee in bankruptcy had waived or was estopped from asserting any claim against the defendant for failure to sell the property under the statute. The court further said: " It is manifest that the negotiations between the attorney for the appellant and the attorney for the trustee in bankruptcy, by which it was agreed that the trustee should release this machine to the appellant, were had upon the theory that the estate would thereby be released from any claim on the part of the appellant with respect to either machine."

These cases, it seems to me, are successive and logical steps, in conjunction with other cases cited herein, towards the establishment of the principle of law, adverted to herein, that a new contract for a new consideration between the parties will remove the case from

the operation of the statute.  This idea is borne out by the fact that the court, in its decision in the case of *Boschen* v. *Multicolor Sales Co., Inc.* (98 Misc. 637), cites both the *Fairbanks* case and the *Breakstone* case in referring to the fact that a new agreement is not barred by the statute.  The court says: " The *return* of the machine to defendant *at plaintiffs' request* with the concurrent *return to plaintiffs of their notes* constituted a valid *new contract* of resale, or a waiver for a new and valid consideration.   *  *  *   A new agreement for a resale and modification of the original contract is not barred by the Personal Property Law.  (*Seeley* v. *Prentiss Tool & Supply Co.*, 158 App. Div. 853, 856, 857; affd., 216 N. Y. 687; *Breakstone* v. *Buffalo Foundry & Machine Co.*, 167 App. Div. 62, 73; *Fairbanks* v. *Nichols*, 135 id. 298, 301, 302.) "

Another case cited by defendant, which it seems to me also fails to sustain defendant's proposition, is that of *Ure* v. *Deyo* (184 App. Div. 808).  That was an action by plaintiff, the wife and assignee of Ure, the vendee, of certain machinery under a conditional contract of sale made with Deyo and others as copartners, defendants, which contract provided that certain payments were to be secured by notes of said vendee maturing at different specified dates, *but did not provide for a renewal of those notes.*  None of the notes were paid to the defendants.  A corporation under the name of the Deyo-Macey Engine Company was subsequently formed which took over the partnership assets and assumed its obligations.  Ure, the vendee, had difficulty meeting his notes, and when the notes became due *he gave new ones* from time to time, not to the defendants, but *to the corporation.*  He paid only part of the indebtedness to the corporation, and after much delay, default having been made by him, the corporation took possession and sold the property without giving the notice required by section 66 of the Personal Property Law. Ure thereafter assigned his alleged cause of action to the plaintiff, who brings this action against the *original vendors* to recover under the statute the amount paid by Ure on the contract.  In denying plaintiff's right to recover the court says: " By giving new notes to the corporation he [Ure] *changed the contract* and of course affected the rights of his vendors, these defendants.  *  *  *  Ure had placed it out of his power to ' comply with the terms of such contract ' [of conditional sale].  And on the other hand the corporation by taking the new notes had placed it out of its power for the time being to retake the property.  *So that the whole situation was different* from what it was when it left the hands of the defendants.  Neither was it a situation  *  *  *  contemplated by the original contract.  The complaint, therefore, was properly dismissed."

16

To sum up the evidence revealed in the case at bar, it appears that plaintiff never expressly or impliedly authorized the defendant to retain this truck beyond the thirty-day period, allowed by statute. And I also find that if, within this thirty-day period, an arrangement based on a consideration moving from both parties had been made with reference to the truck, the period within which it must be sold could have been extended; but to do this there would have had to be a mutual agreement, that is, a new agreement between the parties for a new consideration, and that such arrangement would, provided it had occurred, have been sufficient to remove the bar of the statute.

I find that no such new agreement existed between the parties, that no new consideration passed between them, and that the evidence in the case not only fails to establish the same, but constitutes merely a waiver, which is contrary to law, and the failure of the defendant to sell the truck within the statutory period, in view of the facts and circumstances of this case, imposes upon it the penalty provided by section 80-e of the Personal Property Law.

The defendant further calls the court's attention to section 80-f of the Personal Property Law, which reads as follows:

" Sec. 80-f. Waiver of statutory protection. No act or agreement of the buyer before or at the time of the making of the contract, nor any agreement or statement by the buyer in such contract, shall constitute a valid waiver of the provisions of sections seventy-eight, seventy-nine, eighty, eighty-a, and eighty-e."

And it urges that such amendment makes inoperative only such waivers or agreements as might be included in the original contract; that the Legislature could very clearly have stated that no waiver or agreement entered into *at any time* would be valid, and, not having done so, it, therefore, follows that a waiver or agreement outside of the contract, and not being excluded by the said section, must be deemed contemplated and allowed by the Legislature. In other words, the amendment is cited as authority for the proposition that by virtue thereof the law permits a waiver of the provisions of the Personal Property Law herein discussed. This is not the law, nor the intent and meaning of the section, as I view it. By being silent as to the effect of an attempted waiver by the buyer when he was in default, the natural and logical interpretation of the amendment is, according to my understanding, that the law as then existing in reference to the subject, as defined in the numerous decisions of the courts of the State, is *ipso facto* adopted and approved.

The natural inference to be drawn from the reading of the amendments, taken in connection with the history of the legislative acts and the legal decisions concerning the subject of waiver of the

provisions of the statute, is that, if the Legislature had intended to include other and separate agreements and attempts at waiver outside of the contract itself in its amendments, it would have incorporated the same in such language as would have prohibited the same. The fact that it did not do so clearly shows that such was not its intention.

In view of the nature of the defense to this action, being in the nature of confession and avoidance, the burden is placed upon the defendant of establishing its defense by a preponderance of the evidence. I find, as already intimated, that it has failed to do so. On the other hand, I am frank to say that I have reached my conclusion in favor of the plaintiff, not on account of defendant's failure to meet the burden, but find from the evidence in the case that plaintiff has established his cause of action by a fair preponderance of the evidence.

Having decided the fact and the law involved in this action in favor of plaintiff as to his right to recover the damages provided by the statute, consideration of the question of damages will next be in order. The statute provides, in section 80-e, that if the seller fails to comply with the provisions of the statute after retaking the goods, the buyer may recover from the seller his actual damages, if any, and in no event less than one-fourth of the sum of all payments which have been made under the contract, with interest.

The plaintiff places the actual value of the truck at the time of seizure at the sum of $1,550. This claim was supported by a witness Borst, sworn on behalf of the plaintiff. The latter was a dealer of experience in handling and selling trucks. He testified that he had sold 225 trucks within nine months. He placed the value of the truck on November twenty-fifth, the time of the taking, at $1,550. The truck appeared to be in good condition. The plaintiff testified that he had driven the truck from 20,000 to 21,000 miles, and that he had placed new tires on the rear wheels shortly before the seizure. He also stated the life of such a truck was three years. He had used it nine months. The witness Mr. Suttner, for the defendant, testified that the value of the truck was from $800 to $850, and that the life of the truck was 150,000 to 200,000 miles, and that the average life of the tires was 20,000 to 30,000 miles. He later testified that the truck might bring $950.

The purchase price of the truck was $2,275.12. It had only been used nine months, and evidently had received good usage and was in good condition. Its life according to plaintiff was three years. He had used it but nine months. Mr. Suttner, in testifying as to the life of the truck, placed it in mileage from 150,000 to 200,000 miles. The plaintiff had only used it 20,000 to 21,000 miles. So there is not

much dispute between the parties as to the life of the truck. It seems to me that, considering the price paid for the truck, $2,275, and the small proportionate usage that plaintiff had of the truck from the time of purchase to that of its seizure, and also its condition, the claim of plaintiff of $1,550 as the value of the truck is fair and reasonable. He establishes that value, to my mind, by a fair preponderance of the evidence. His actual damage, therefore, suffered by him and recoverable in this action, is the value of the truck at the time it was taken from him, $1,550, less the amount he still owed on the truck, namely, $865.97, leaving the balance of $684.03 due the plaintiff from defendant by reason thereof.

Judgment is, therefore, rendered in favor of plaintiff and against defendant for the sum of $746.59, being the amount of said damage sustained, with interest from the 25th day of November, 1926, together with the costs and disbursements herein in addition thereto.